INTEC SYSTEMS, INC. d/b/a
Computer Tech,
Appellant,

v.

John LOWREY, Appellee.

No. 05–06–00089–CV.

Court of Appeals of Texas,
Dallas.

Aug. 3, 2007.

Rehearing Overruled Sept. 14, 2007.

Carol Stephenson, Busch & Myers, L.L.P., Dallas, for Appellant.

Kenneth H. Molberg, Wilson, Williams & Molberg, P.C., Dallas, for Appellee.

Before Justices MOSELEY, O'NEILL, and MAZZANT.

## OPINION

Opinion by Justice O'NEILL.

Intec Systems, Inc. d/b/a Computer Tech (Intec) appeals a bench trial judgment in a breach of contract suit awarding former sales representative John Lowrey (Lowrey) a portion of unpaid sales commissions. In eight issues, Intec argues the judgment is erroneous because Lowrey's agreement was modified by unequivocal notice to and acceptance by Lowrey of the modification, which authorized the amount withheld; that Lowrey did not establish a contrary modification; and that the damage award is contrary to the evidence. In three responsive issues, Lowrey argues Intec did not meet its burden to prove contract modification; or alternatively, that Intec mischaracterizes the judgment because this is not a contract modification but simple contract breach case; and that the damage award is proper. Because the trial court's findings do not address the contract modification on which Intec relies and Intec did not request findings on that affirmative defense; because modification was not conclusively proven; and because the there is sufficient evidence to support the damage award, we affirm.

### BACKGROUND

Intec, a seller of computer-related hardware, software, and services, hired Lowrey on an at-will employment basis as an account representative. Lowrey was paid by commission under a written "Sales Compensation Plan" (Contract) governing Intec sales representatives. The Contract contained a formula calculating commissions based on a percentage of gross profit mar-

gin and provided that "margin" would be calculated based on the "true cost" of sales.

To accommodate a request by a Lowrey customer, Fujitsu, for an on-site service or technical support professional at no cost to Fujitsu, Intec placed an employee, Carole Daniel (Daniel), at Fujitsu's facility. Intec began deducting from Lowrey's commissions about 30% (apparently based on Lowrey's commission rate) of the cost to Intec of providing Daniel's services to Fujitsu. At trial Intec claimed the Contract authorized this deduction under its "true cost" provision. Intec branch manager Tommy Morris (Morris) testified:

Q. ... Is there anything in that compensation agreement that provides for the type of arrangement ... whereby you took money ... from [Lowrey's] commissions in order to pay Carole Daniel?

A. I would read the sentence that says: Gross profit is based on a per invoice total and gross margin will be calculated at time of the invoice based on true costs.

There is evidence that Lowrey complained about the deductions while employed but chose not to take any action and continued his employment because he needed his job. There is also evidence that Lowrey was given the choice to recall Daniel to avoid further deductions but declined to do so because it would risk losing the Fujitsu account. Morris testified the Contract was not modified after Lowrey complained:

Q. Did you ever go back and change the sales commission plan when he complained?

A. No, we did not.

Morris explained that because supplying on-site employees to customers was an arrangement unique to Lowrey, the Contract was not re-written on a company-wide basis to specifically address deductions for doing so.

Following the first day of a two-day trial (the second day came about ten months after the first), the trial court found Lowrey "waived the right to claim damages ... for the actual cost of Carol Daniel[ ] ... being at Fujitsu" because he was aware of the deductions "to pay [her] salary" but chose not to have her recalled ("waiver ruling"). The court's findings and conclusions entered following completion of the trial found that Lowrey became aware that Intec was deducting "30 percent of the labor costs of Carole Daniel," found that he protested but did not quit, and concluded that Intec did not breach the Contract by deducting "30 percent[ ] of the *true cost* of the labor of Carole Daniel because [Lowrey] waived this conduct [emphasis added]. . . ."

While employed, Lowrey received an email from Morris (Morris email) referring to the commission-deduction formula as "salary $\times$ 2.5 / 12 = monthly cost of [Daniel]." At trial Intec explained that this formula did not base the deductions on Daniel's *actual salary* of $22 per hour but marked up that figure by 2.5 times to reach her *billing rate* to third parties of $55 per hour. Lowrey testified he was told the markup was to cover employee benefits. But Intec testified that this formula was to generate *revenue* from the arrangement, the revenue that it could generate by otherwise billing third parties for Daniel's services that it was providing to Fujitsu for free.

Lowrey's trial position was that he had no knowledge and was never apprised that the deductions had been revenue-based rather than strictly cost-based and that

this breached the Contract. Intec relies on the Morris email claiming Lowrey was notified of the formula even if he did not understand it. Lowrey did not deny receiving the Morris email and introduced it into evidence himself. Intec also argues Lowrey reviewed for accuracy and made corrections to commission-deduction statements and relies on other emails calculating deductions and referring to "Base Bill Rate."

Lowrey ultimately brought this contract breach suit on the original Contract:

> Plaintiff would show that defendant has breached its contract with the plaintiff, by which defendant promised that it would abide by an agreement with respect to compensation originally entered into between plaintiff and Computer Tech, Inc.

He initially sought to recover the entire amount of the commission-deductions, including those calculated using Daniel's actual salary and benefits (hereafter "actual salary," for brevity). However, in light of the trial court's waiver ruling, the original actual salary-based claim was abandoned; Lowrey made no challenges to the final judgment and filed no cross-appeal challenging the waiver ruling or seeking recovery of commissions deducted based on actual salary.

Following the trial court's waiver ruling, the court stated it would continue the trial "on the issue of the exact commissions earned by [Lowrey] from August 9, 1998 [1] through the time of employment with [Intec] *less the actual salary* of Ms. Daniel [emphasis added]...." The trial court stated, also after that first trial day, that it was not convinced Intec had shown the basis for calculating deductions using Daniel's $55 per hour billing rate instead of the $22 per hour she was actually paid.

The court ultimately concluded that commission-deductions calculated using a multiplier "in excess of the true cost of the labor of Carol Daniel" breached the Contract. The court found Intec "was not using the 'true' cost of Daniel's labor .... [but] was 'marking up' Daniel's true cost (from approximately $22 per hour to approximately $55 per hour)" and that Lowrey "did not consent or agree to this practice." After the court entered its findings of fact and conclusions of law, Intec did not request any additional or amended findings and conclusions on the issue of whether the original Contract was modified to specifically permit the revenue-based deductions and that Lowrey was unequivocally notified of that modification to his Contract.

The court implicitly construed the Contract's "true cost" term to require Intec to use actual salary as the commission-deduction multiplier. Intec does not specifically challenge that construction but appeals the judgment arguing *"modification* to [Lowrey's] at-will commission calculation formula...." [2]

---

1. The court ruled recovery of commissions before that time were barred by four-year limitations governing contract disputes. Lowrey does not challenge that ruling.

2. We note Intec's Issue Nos. 6 and 8 do argue (i) the trial court's findings and conclusions "misuse" the Contract's "true cost" term because the "evidence proved conclusively" that Daniel's cost would be calculated based on her billing rate and (ii) the judgment erroneously "rewrites the unambiguous written agreement" of the "salary × 2.5 / 12" commission-deduction formula in the Morris email. The context of Intec's briefing, however, shows these issues address contract modification, not contract construction, and we view them as such.

## DISCUSSION

The supreme court outlined the rules governing modification of at-will employment contracts in *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227 (Tex.1986). Contract modification is an affirmative defense. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984). The party asserting it bears the burden of proof. *Hathaway*, 711 S.W.2d at 229.

Enforceable at-will employment contract modifications require proof of (i) notice of the change and (ii) acceptance of the change. *Hathaway*, 711 S.W.2d at 229. To satisfy notice, the employer must prove it "unequivocally" notified the employee of "definite changes" in employment terms. *Id.* The employer must prove the employee knew of the "*nature* of the changes" and the "*certainty* of their imposition." *Id.* (emphasis added). Acceptance is satisfied as a matter of law by an employee's continued employment after unequivocal notice. *Id.*

The trial court made no findings of fact or conclusions of law addressing Intec's affirmative defense that the Contract was specifically modified to permit Intec to calculate commission-deductions using a multiplier of Daniel's billing rate.[3] While Lowrey's continued employment after the date of the Morris email is not disputed, there is no finding addressing, and Intec requested none on, the contested issue of whether Lowrey was given "unequivocal" notice of this modification as a "definite change" to the terms of his Contract, the nature of which and certainty of its imposition he understood. *See Hathaway*, 711 S.W.2d at 229.

Intec filed a generic post-judgment request for findings and conclusions and notice of past due findings. But when the trial court entered them Intec filed no specific request for additional or amended findings and conclusions on its affirmative defense. *See* TEX.R. CIV. P. 298 (request for "specified" additional or amended findings or conclusions "shall be made within ten days after the filing of the original findings and conclusions"). Findings must be separately filed and may not be recited in the judgment. TEX.R. CIV. P. 299a. A court's oral statements "cannot substitute" for findings and conclusions. *Larry F. Smith, Inc. v. The Weber Co.*, 110 S.W.3d 611, 615 (Tex.App.-Dallas 2003, pet. denied).

Intec's appeal on liability relies on its modification defense. But Intec never requested specific findings and conclusions on that affirmative defense in the trial court. Intec's modification defense was not preserved on this record for failure to request factfindings on it. *See 1st*

---

3. Intec cites (i) the trial court's conclusion that Lowrey waived recoupment of commission-deductions based on Daniel's "true cost" and (ii) Lowrey's testimony that his commission calculation "changed" after Daniel was sent to Fujitsu but he did not recall her and continued his employment. However, neither specifically addresses the relevant modification at issue; i.e., a "definite change" from *cost*-based to *revenue*-based deductions and "unequivocal notice" of it. Further, in light of our analysis, we find no conflict in the trial court's judgment, findings, and conclusions, properly viewed in context, and overrule Intec's Issue Nos. 4–5 arguing that they conflict. *See Ives v. Watson*, 521 S.W.2d 930, 932 (Tex. Civ.App.-Beaumont 1975, writ ref'd n.r.e.) ("(a) If the findings of fact are susceptible of different constructions, they will be construed to be in harmony with the judgment and to support it; (b) every presumption will be indulged in favor of the trial court's findings and judgment.").

*Coppell Bank v. Smith,* 742 S.W.2d 454, 464–65 (Tex.App.-Dallas 1987, no writ), *disapproved on other grounds* in *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 678 (Tex.2000):

> A party asserting affirmative defenses in a trial before the court must request findings in support of such a defense in order to avoid waiver on appeal. If the findings filed by the court do not include any element of the ground of defense, the party asserting the ground of defense must request additional or supplemental findings of fact. The failure to do so effects a waiver of the ground or defense.

"[A]n express finding of fact cannot extend by implication to cover independent grounds of defense" and "cannot extend to cover further independent issuable facts." *F.R. Hernandez Constr. & Supply Co. v. Nat'l Bank of Commerce,* 578 S.W.2d 675, 679, n. 4 (Tex.1979).

■■■■ Intec argues its modification defense was conclusively established because Lowrey did not deny receiving the Morris email stating the commission-deduction formula Intec used. We disagree. A matter is conclusively established by the evidence "only if reasonable people could not differ in their conclusions...." *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex. 2005).

The Morris email, while referring to a formula, does not state, let alone state unequivocally, that Intec was *changing* the basis for deducting commissions to supplant the *Contract's* "true cost" commission-payment term with a commission-deduction formula that was revenue-based. "[S]alary × 2.5 / 12 = monthly cost" does not state the Contract is being modified to use Daniel's "billing rate" and in fact reinforces a cost-based formula by referring to "monthly cost." *Cf. Price Pfister, Inc. v. Moore & Kimmey, Inc.,* 48 S.W.3d 341, 350 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (commission statement showing calculation at different rate than originally agreed is not "unequivocal notice ... of a definite change" in future terms as a matter of law).[4]

■■■ As the supreme court notes, contract modification depends on *intent,* which is a fact question. *Hathaway,* 711 S.W.2d at 229. Lowrey testified he was told the deductions were factoring in Daniel's *benefits;* and Lowrey's trial position was that he never agreed to fund Intec's desire to generate *revenue* from the deduction-formula used. Intec argued Lowrey received the Morris email and commission-deduction calculations referring to "base bill rate" and that he reviewed deductions for accuracy even if he did not understand Intec was using Daniel's billing rate to generate revenue at his expense.

We conclude unequivocal notice of the nature of a definite change was a disputed fact issue on which reasonable minds here could differ such that Intec's modification affirmative defense was not conclusively established. We overrule Intec's Issue Nos. 1–2, 6 and 8. In light of that disposition, we need not reach Intec's Issue No. 3 that Lowrey did not establish a subsequent modification.

■■■ Under Issue No. 7 Intec argues the damage award is erroneous because

---

4. Case law Intec cites to argue that merely claiming lack of actual knowledge or understanding of the substance of a change of which one is notified does not defeat a modification defense are inapposite. The notices in those cases were far more detailed and specific. *See, e.g., In re Halliburton Co.,* 80 S.W.3d 566, 568–69 (Tex.2002); *Burlington N.R.R. Co. v. Akpan,* 943 S.W.2d 48, 51 (Tex.App.-Fort Worth 1996, no pet.).

Lowrey failed to meet his burden of proof and because the award is contrary to all the evidence.[5] Intec contends the award is erroneous because the trial court ruled Intec was entitled to a portion of the withheld commissions (calculated using actual salary) but awarded the *entire* sum of $29,233.05, stated on Intec's trial exhibit 8(DX8) to be the "Lowrey Commission Reduction." Intec argues that under the judgment it was entitled to withhold 30% of the $86,249.29 stated on DX8 to be the total salary and benefits paid to Daniel during the relevant period. Intec concludes that the most Lowrey was entitled to recover was the $3,358.26 difference between that figure and the amount of the judgment (i.e., $29,233.05 - ($86,249.29 × .30) = $3,358.26).

 Intec argues that the damage award is contrary to all the evidence but its brief does not explain why the evidence Lowrey cites in support of the judgment is inaccurate. The appellant bears the burden to show a judgment is erroneous to obtain a reversal. *Murray v. Devco, Ltd.,* 731 S.W.2d 555, 557 (Tex.1987). The amount of damages was a contested issue. At trial Lowrey disputed the accuracy of DX8. He pointed to invoices and emails showing months of commission deductions not reflected on DX8. He introduced his own trial exhibit (PX2) that he contended accurately showed the amount of "Commissions Taken" during the relevant period of $49,225.66. Intec's brief concedes that the Morris email provides for a "credit that Lowrey received against Daniel's cost" for warranty work Daniel performed and for other "additional services" performed by Daniel "for which Fujitsu could

be billed...." But Intec points to nothing in its DX8 exhibit that shows these credits were applied or the amount of them.

 In a legal sufficiency review, we view the evidence in a light most favorable to the judgment and indulge every reasonable inference to support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *Thomas v. Martinez* 217 S.W.3d 680, 683 (Tex.App.-Dallas 2007, no pet.) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex.2005)). In a factual sufficiency review, we consider and weigh all the evidence and set aside the verdict only if the evidence supporting a finding is so weak that the finding is clearly wrong and manifestly unjust. *Long v. Long,* 196 S.W.3d 460, 464 (Tex.App.-Dallas 2006, no pet.). The trial court as factfinder weighs the evidence and resolves conflicts in it. *Young v. Young,* 168 S.W.3d 276, 281 (Tex. App.-Dallas 2005, no pet.). The court here announced it would review the parties' backup documentation supporting their respective damage calculations before ruling. We have reviewed the record and find that under the controlling standard the evidence is sufficient to support the award. We overrule Intec's Issue No. 7.

### CONCLUSION

Having overruled all of Intec's issues, we affirm the trial court's judgment.

---

**5.** Based on the substance of the briefing, we address Issue No. 7 as an evidentiary sufficiency issue.