# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00242-CV

**Hazel Ray, Individually and Executrix of the Estate of Dock L. Dire; Teaneah Jackson, as Next Friend of T.D., a Minor; and Attorney Don R. Caggins, Sr., Appellants**

**v.**

**T.D., a Minor, Appellee**

**FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT NO. 189,057-B, HONORABLE RICK MORRIS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This appeal involves a dispute over an attorney's claim for fees from the proceeds of a minor settlement. Finding in part that the minor's attorney had no enforceable agreement entitling him to fees from the settlement proceeds, the district court denied the attorney any recovery. The attorney, Don R. Caggins, Sr., brings a single issue asserting that the district court abused its discretion in so ruling. On this record, we cannot conclude that the district court abused its discretion. We will affirm the judgment.

## BACKGROUND

In October 2000, Dock L. Dire was killed in an automobile-motorcycle collision with Carroll C. Johnson. At the time of his death, Dire had a minor daughter, T.D. Appellant Teaneah Jackson is T.D.'s mother, while appellant Hazel Ray is Dire's surviving mother and

executrix of his estate. Jackson and Ray are residents of Shelby County, Tennessee. Shortly after Dire's death, a guardianship proceeding was filed in the probate court of Shelby County and, on or about January 30, 2001, Ms. Jackson was appointed and qualified as guardian of T.D.'s estate.

In October 2001, Ray, individually and as executrix of Dire's estate, and Jackson, as T.D.'s next friend, filed a "friendly" wrongful death action against Johnson in the district court of Bell County. The action was intended to obtain the court's approval of a settlement wherein Johnson's automobile insurance carrier, State Farm, had agreed to pay the $100,000 limit of Johnson's policy, to be apportioned among the plaintiffs, in exchange for a release. Caggins represented all three plaintiffs. The district court appointed a guardian ad litem, Neale Potts, to represent T.D.'s interests. Various complications delayed efforts to finalize the settlement, including a lien asserted by the federal government for medical care provided to Dire, events in the Tennessee guardianship proceeding, and Caggins's claim for attorney's fees. Eventually, State Farm, on Johnson's behalf, agreed to interplead the $100,000 policy limits, deposit the amount into the court's registry, and bring in the federal government as a third-party defendant.

The parties eventually resolved the lien issue, leaving Caggins's attorney's-fee claim as the sole sticking point in finalizing the settlement and dispensing the funds.[1] On March 21, 2005, Caggins filed a motion for court approval of attorney's fees "in the amount of 33 1/3 of the recovery." Caggins represented that he "has been the sole attorney to prosecute this cause on behalf

---

[1] The record reflects that Caggins also asserted a similar attorney's-fee claim in the Tennessee guardianship proceeding. The Tennessee court held that the district court here had sole jurisdiction to adjudicate Caggins's entitlement to fees from the settlement proceeds.

2

of all Plaintiffs . . . since November 2000" and that he "has prosecuted the claim whereby policy limits has been tendered by Defendants."

Potts, the guardian ad litem, filed a report with the court in which he objected to Caggins's request:

> I have not been able to reach an agreement with Mr. Caggins as to the amount of his fee. It appears to me that this case required very little work by Mr. Caggins to obtain the insurance company's agreement to tender the policy limit. Although on December 23, 2004, I requested that Mr. Caggins furnish me with a copy of his file and a listing or estimation of the time he spent obtaining the settlement, he has declined to do so.
>
> The determination of the amount of attorney's fee[s] due Mr. Caggins is further complicated by the fact that he has represented to [] me throughout this case . . . that he was employed by Teaneah Jackson, the mother of [T.D.], to represent the interests of the child based upon a 40% contingency fee contract. It appears that the only contract executed by Teaneah Jackson is a handwritten letter signed by her, a copy of which is attached hereto. I am not even sure that writing constitutes a contract for legal services. . . .
>
> . . . .
>
> It appears to me that Mr. Caggins may also have various conflicts of interest in representing the various parties in this case. In requesting this Court to allow a fee based upon the percentage of the recovery where no contingency fee contract exists, I believe that Mr. Caggins is taking a position that is adverse to his client, [T.D.]
>
> Mr. Caggins is also representing Hazel Ray, the mother of Dock L. Dire. . . . The three clients of Mr. Caggins have conflicting claims to the $100,000 settlement proceeds, particularly where the damages suffered by [T.D.] as a result of the death of her father far exceed the amount of the settlement proceeds.
>
> . . . .
>
> To Mr. Caggins's credit he has obtained a reduction in the medical lien from $44,353.15 to $29,065.42, resulting in a savings of $15,287.73.
>
> It is my recommendation to the Court that Mr. Caggins's fee should not exceed $12,500.

Potts attached to his report a copy of the Jackson "handwritten letter." It states:

I'm mother of [T.D.] I herein imply [sic] attorney Don Caggins to represent the interests of my daughter [T.D.] for the death of her father Dock L. Dire.

> Thanks,
> Ms. Teaneah T. Jackson.

The document then listed Jackson's address and contact information and concluded with, "Any questions please feel free to call." The document was not dated, was not signed by Caggins, and did not mention fees or a fee agreement.

Potts also attached a document entitled "Power of Attorney" that was purportedly executed by Caggins and Hazel Ray. The instrument appointed Caggins "as my true and lawful attorney" and provided that he would receive "33 1/3 percent of any collection on settlement before" filing suit and 40 percent "after suit is filed," after deduction for expenses.

Potts asserted in his report that Caggins had not complied with the statutory requirements governing contingent-fee agreements, *see* Tex. Gov't Code Ann. § 82.065 (West 2005), and that Caggins had violated the disciplinary rules of professional conduct. *See* Tex. Disciplinary R. Prof'l Conduct 1.04(d) (relating to contingent-fee contracts), 1.06(b) (relating to conflicts of interest), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 2005). Potts also argued that by seeking recovery of attorney's fees out of T.D.'s settlement proceeds, Caggins had breached his fiduciary duty to T.D. and that fee forfeiture was an appropriate remedy for such a breach. *See Burrow v. Arce*, 997 S.W.2d 229, 237-38 (Tex. 1999).

Potts also noted correspondence to the effect that USAA, Dire's automobile insurer, had agreed to pay the $300,000 policy limits on Dire's uninsured/underinsured motorist

4

coverage, and that Caggins was claiming he was due a fee of $100,000 in that action, but that the case had not yet been filed.

Caggins filed a one-page response to the ad litem's report in which he stated, "There does not exist nor have their [sic] ever existed a conflict of interest between any of my clients." Caggins also expressed surprise at Potts's position that he was entitled to only a $12,500 fee, claiming that he had understood Potts to have already agreed to a $25,000 fee, only $8,333.33 short of the $33,333.33 Caggins had claimed.

A hearing was held on April 1, 2005. The only evidence presented, in addition to Potts's ad litem report, was a December 29, 2004 letter from Potts, introduced by Caggins, in which the ad litem had suggested a distribution of the settlement proceeds whereby Caggins would receive $25,000 in attorney's fees. Potts explained that he had written this letter based on Caggins's representations throughout the litigation that he actually had an enforceable 40% contingent-fee agreement. According to Potts, he did not ascertain the true nature of Caggins's agreements until later, "probably two weeks prior to the date of my report."

Potts explained generally that his recommendation of a $12,500 fee—"if the court is going to allow a fee"—was "based upon the reduction of the government lien and . . . some work by Mr. Caggins in obtaining the settlement." Potts added, however, that he had been "unable to obtain a copy of Mr. Caggins's file to review and . . . a listing of his time in this case . . .and it's been difficult for me to come to an—even a recommendation for fees."

During the hearing, the district court expressed reservations that Caggins had an enforceable fee agreement, but added that "before I gut a lawyer on his entire fee, I'm going to take

5

this matter under advisement and look at it very carefully." Two weeks after the hearing, the district court advised the parties by letter that it had "determined that Mr. Caggins is not entitled to any attorney's fees out of the settlement proceeds."

Subsequently, USAA filed a plea in intervention to interplead the $300,000 limits of Dire's underinsured motorist coverage. The district court later granted the intervention.

In September, the district court signed a judgment approving the settlement between the plaintiffs and Johnson, dividing most of the $100,000 settlement proceeds among the plaintiffs, releasing Johnson, but reserving the disputed amount of Caggins's attorney's-fee claim. The court ordered $53,333 deposited in the court's registry for the benefit of T.D. pending further orders of the court or to be held until T.D.'s eighteenth birthday. The amount apparently included (1) $20,000, the amount of a structured-settlement for T.D.'s benefit; and (2) $33,333, the amount of Caggins's attorney's-fee claim against the settlement proceeds.

Potts filed a motion to withdraw all funds held in the court's registry and forward them to the registry of the Tennessee probate court. Caggins objected to the withdrawal of all of the funds, arguing that the district court had not rendered a judgment regarding his entitlement to attorney's fees from the $300,000 tendered to the court by USAA.[2]

A hearing was held on January 13, 2006. On that date, for the first time, Caggins presented two typewritten documents, each titled "Contingent Fee Contract," one of which was

---

[2] Caggins also filed a motion to modify the judgment to clarify that the district court had denied his request for fees from the State Farm policy proceeds and that the $53,333.33 in the court's registry "are pending further Order of the Court and the outcome of the Court's denial of any attorney's fee to plaintiff's counsel . . . asserted as 1/3 interest ($33,333.33) of the $100,000 settlement or they will be held until [T.D.'s] 18th birthday."

between himself and Hazel Ray, while the other was between himself and Jackson, as T.D.'s next friend. Both contracts were dated January 6, 2006, but purported to relate back to the commencement of Caggins's representation on November 16, 2000. The contracts provided for 33 1/3 percent of any gross recovery before any court action is filed, 40 percent of any gross recovery after the action is filed, but before commencement of trial, 45 percent of any gross recovery after commencement of trial, and 50 percent of any gross recovery after the filing of any appeal by any party. Caggins introduced these documents into evidence and asserted that they rendered moot any dispute regarding the enforceability of his earlier purported fee agreements. Caggins acknowledged that the two contracts were signed on January 6 and that he did not know whether Jackson had obtained authorization from the Tennessee probate court to execute her contract on T.D.'s behalf. Potts, on T.D.'s behalf, urged that these instruments were unenforceable, violated ethics rules, and breached Caggins's fiduciary duty to T.D.

Caggins also presented some brief testimony touching on the legal services he had provided to T.D. and the other plaintiffs. The following is his entire testimony regarding that matter:

> . . . I represented not only the minor in this matter, but the estate of the daughter and also the surviving mother who is Hazel Ray. So, not only did I represent the minor, but I also represented the estate and Ms. Hazel Ray.
>
> . . . .
>
> The record will reflect that all of the work for the Plaintiff has been performed by me or my law firm, all of the investigative work. I made four trips to Memphis, Tennessee. I made approximately 13 trips from Houston to Bell County, the—the only attorney that represented the interest of the minor, the interest of the estate, or the interest of the surviving mother has been myself.

7

. . . The maximum amount of recovery has been recovered from the available funds and policies in this matter.

. . . .

I performed all of the work, Judge.

Johnson's counsel also stipulated on the record that Caggins had been the only attorney representing the plaintiffs' personal injury claims and that he had worked with no other attorney or other person acting on the plaintiffs' behalf.[3]

On cross-examination, Potts elicited Caggins's admission that Potts had asked for a copy of Caggins's files, a time sheet, or a compilation of the number of hours Caggins had spent on the case so Potts could determine how much work Caggins had put into the case. Caggins acknowledged that he had not provided that information.

At the hearing's conclusion, the district court invited additional briefing on the attorney's-fee issue. It ultimately rendered final judgment that Caggins was "not entitled to receive any attorney's fees from the settlement proceeds on deposit in the Registry of this Court." The district court further ordered that all funds in excess of the $133,333.33 claimed as attorney's fees (the $33,333.33 Caggins claimed from the State Farm proceeds plus the $100,000 he claimed from the USAA proceeds) be transferred to the probate court in Shelby County, Tennessee and that the

---

[3] Specifically, Johnson's counsel stated:

[F]rom the outset the claim was presented on behalf of the named Plaintiffs by attorney Don R. Caggins. I worked with no other attorney throughout the process and worked with no other person on behalf of the Plaintiffs in terms of handling and settling their personal injury claims. The only person who's claimed to have represented them in that capacity has been Don R. Caggins.

8

$133,333.33 claimed as attorney's fees be placed in an interest-bearing account in the district court's registry pending further order of the district court. The district court entered the following pertinent findings of fact based on the evidence presented at the two hearings:

> 6. . . . . No evidence has been presented to this Court that the Probate Court in Shelby County, Tennessee has authorized Teaneah Jackson to enter into a contract with Attorney Caggins for the representation of the minor, [T.D.]
>
> . . . .
>
> 9. On April 1, 2005, . . . the court received evidence and heard argument with regard to whether or not attorney's fees could be collected or charged as they related to the funds distributed to the minor plaintiff. . . [Caggins] represented to the court that he was the attorney for the minor plaintiff. . . . In support of his motion [for attorney's fees], Mr. Caggins offered the following evidence:
>
> a. A handwritten unverified document purportedly signed by Teaneah Jackson [quoted, attached, and incorporated].
>
> b. A document entitled "Power of Attorney" purportedly executed by Hazel Matthew Ray . . . .[attached and incorporated].
>
> c. In response to Mr. Caggins's motion, the ad litem, Mr. Potts, offered his report which was accepted as evidence and testimony and is included herein [attached].
>
> At hearings before the court on April 1, 2005 and January 13, 2006, Mr. Caggins declined to allow his case file to be examined by the attorney ad litem, declined to furnish a time sheet showing the time spent on the case and declined to give an estimate of the number of hours spent in representation of the case.
>
> The parties were notified by the Court in a letter dated April 14, 2005 that the Court had determined that Mr. Caggins was not entitled to any attorney's fees from the settlement [letter attached and incorporated].
>
> . . . .

9

13. No sufficient evidence has been presented to this court to support a legally binding claim for the recovery of attorney's fees of and from the proceeds to be distributed to the minor plaintiff, [T.D.]

14. Attorney Don R. Caggins, Sr., is claiming that he is entitled to a percentage of the amounts to be distributed to the Minor Plaintiff, [T.D.] and is not seeking compensation for his hourly work based on an hourly rate.

15. No legally enforceable written agreement has been presented to the Court or offered as evidence to support a claim for a contingency fee or percentage recovery for attorney's fees out of the funds to be distributed to the Minor Plaintiff, [T.D.]

. . . .

19. There is an inherent conflict of interest when an attorney represents multiple parties asserting claims against the same settlement proceeds if the damages suffered by the parties exceeds the amount of the settlement proceeds.

20. There is no evidence that each affected or potentially affected client consented to representation by Attorney Don R. Caggins, Sr., after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation of the Plaintiffs and the advantages involved, if any.

21. . . . . The [January 6, 2006] Contract [attached and incorporated] was obtained after Mr. Caggins had received notice from this Court in its letter of April 14, 2005 that he was not entitled to any attorney's fees in this case from the settlement proceeds of the minor, [T.D.]

The district court also made the following conclusions of law:

2. The court finds that the evidence presented in support of Attorney Caggins's motion is insufficient to establish a legal right to recover attorney's fees with regards to the funds distributed to the minor, [T.D.], herein.

3. The court finds that there is no legally enforceable contract for attorney's fees between Attorney Caggins and the minor plaintiff, [T.D.]

4. The court finds that no one with legal capacity to retain an attorney on behalf of the minor Plaintiff, [T.D.], ever entered into a proper contract protecting her interest prior to settlement of the claims approved by this Court.

10

5. The court finds that the evidence presented by the attorney ad litem, Neale Potts, is sufficient to support a finding that a conflict of interest [existed] between the parties purportedly represented by Don R. Caggins, Sr. and that no evidence indicating a full disclosure of said conflict has ever been presented to this Court or the alleged clients of Don R. Caggins, Sr. Specifically, rule 1.06 of the Texas Disciplinary Rules of Professional Conduct precludes Attorney Caggins's effort to seek attorney's fees with regard to the funds agreed to be distributed to the minor plaintiff [T.D.]

6. Attorney Don R. Caggins, Sr. has breached his fiduciary duty to his client by attempting to establish that he is entitled to a contingent attorney's fee through the execution of the Contingent Fee Contract dated January 6, 2006 after being previously advised that he was not entitled to a contingent attorney's fee in the Court's letter of April 14, 2005.

7. The settlements and Judgments herein are approved and are in the best interest of the Minor, [T.D.]

8. It is in the best interest of the Minor, [T.D.], that no attorney's fees be awarded to Attorney Don R. Caggins, Sr., herein.

This appeal followed.

## DISCUSSION

In his single issue, Caggins argues that the district court abused its discretion by "denying plaintiffs' counsel recovery of attorney's fees though plaintiffs' counsel represented all plaintiffs in this cause of action," in allowing "recovery to all plaintiffs without compensation to plaintiffs' counsel," and by "fail[ing] to exercise its discretion in and determined an equitable distribution of attorney's fees as reasonable and necessary payment . . . for counsel's representation of the minor child and remaining plaintiffs." As best we can discern, Caggins asserts on appeal three theories as to why the district court abused its discretion in refusing to award him attorney's fees: (1) Caggins had an enforceable attorney's-fee agreement (i.e., he challenges the sufficiency of the

11

evidence supporting the district court's findings to the contrary)[4]; (2) Potts, the ad litem, was barred by quasi-estoppel from challenging the enforceability of these agreements; and (3) quantum meruit.[5] Caggins prays that he "is entitled to recover reasonable and necessary attorney's fees which are customary to the facts, to-wit, 33 1/3% of the proceeds of the recovery now held in the registry of the district clerk of Bell County, Texas."

**Standard of review**

Generally, we review a trial court's decision to either grant or deny recovery of attorney's fees under an abuse of discretion standard. *EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App.—Austin 2005, pet. denied). The ultimate test for abuse of discretion is whether the ruling was unreasonable or arbitrary or made "without reference to any guiding rules or principles." *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)). When reviewing a trial court's decision under this standard, we must view the evidence in the light most favorable

---

[4] Caggins argues that he "was cloaked in authorization for representation of the appellants in the prosecution of their claims as evidenced by the contracts initially entered into in November of 2000 and the contract executed in an effort to relate back to the original . . ." and that "the refusal of the court to allow payment of any kind under any agreement is an abuse of discretion." He elsewhere asserts that "Jackson . . . acted on behalf of the child and authorized counsel to represent her in recovery of damages, offers her telephone number . . . address . . . and invited that any (one) with questions please feel free to call," and that Ray "had boldly included . . . the specific amount of 33 1/3% of any collection before suit is filed and 40% stated after." We will construe these assertions as a challenge to the district court's underlying findings that Caggins had no enforceable contract for fees and its exercise of discretion to deny fees in light of those findings.

[5] Caggins states that the settlement "was based on the work product of appellent's [sic] counsel" and that "[t]he court's exercise of its discretion could have allowed some determination of actual contract by analysis or quantum meruit in attempting to prevent appellant[']s total lockout of payment of fees and the unjust enrichment of all plaintiffs."

12

to the trial court's ruling and indulge every presumption in its favor. *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 444 (Tex App.—Houston [14th Dist.] 2003, no pet.); *Phillips & Akers, P.C. v. Cornwell*, 927 S.W.2d 276, 279 (Tex. App.—Houston [1st Dist.] 1996, no writ). Legal- and factual-sufficiency issues may be subsumed within this inquiry. Specifically, we may consider both whether the trial court had sufficient information (i.e., sufficient evidence) upon which to exercise its discretion and, if so, whether the trial court abused the exercise of its discretion based on that information. *See Cordova v. Sw. Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 445-46 (Tex. App.—El Paso 2004, no pet.). Where, as here, the trial court made findings of fact and conclusions of law, the evidentiary-sufficiency component of the inquiry is focused on those findings. *See* Tex. R. Civ. P. 299.[6]

**Contract**

For a contingent-fee contract to be enforceable, it must satisfy section 82.065 of the government code:

> (a) A contingent fee contract for legal services must be in writing and signed by the attorney and client.
>
> (b) A contingent fee contract for legal services is voidable by the client if it is procured as a result of conduct violating the laws of this state or the Disciplinary Rules of the State Bar of Texas regarding barratry by attorneys or other persons.

---

[6] Caggins asserts in his brief that "the court in its Findings of Facts and Conclusions of Law declared that they were entered without grounds and solely within the discretion of the court. (C.R.- 153-155)." The citation references one of the *proposed* findings of fact and conclusions of law that Caggins filed—"The denial of plaintiff's counsel's attorney's fees is made within the Court's discretion and without stated grounds." The district court did not adopt or make any such finding.

13

Tex. Gov't Code Ann. § 82.065. A contingent-fee contract must also satisfy the requirements of rule 1.04(d) of the disciplinary rules of professional conduct:

> A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined. If there is to be a differentiation in the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, the percentage for each shall be stated. The agreement shall state the litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

Tex. Disciplinary R. Prof'l Conduct 1.04(d).

The district court found that there was no evidence the Tennessee probate court had authorized Jackson, T.D.'s guardian since January 2001, to execute a contract with Caggins on T.D.'s behalf. Furthermore, the "handwritten unverified document purportedly signed by Teaneah Jackson," mentions nothing about attorney's fees. And, although the "Power of Attorney" purportedly executed by Hazel Ray does mention attorney's fees, it does not reflect that Ray executed the document other than in her own behalf. On the face of each document, neither is an enforceable contract entitling Caggins to attorney's fees from the settlement proceeds paid to T.D.

As for the January 6, 2006 contract, the district court found that at the time of execution, Caggins had a conflict of interest with T.D. arising from their competing claims to the finite settlement proceeds and that Caggins had failed to comply with the disciplinary rules in obtaining his client's consent after disclosure. The district court further found that Caggins previously had been notified by letter "that the Court had determined that Mr. Caggins was not entitled to any attorney's fees from the settlement proceeds" and concluded that Caggins breached

14

his fiduciary duty to his client by procuring the January 6, 2006 contract "after being previously advised that he was not entitled to a contingent attorney's fee." These findings and conclusions, which Caggins does not explicitly challenge, support the district court's finding that the instrument was unenforceable.

The evidence is legally and factually sufficient to support the district court's findings that Caggins had no enforceable agreement entitling him to attorney's fees from the minor settlement proceeds. The district court did not abuse its discretion in refusing to award Caggins attorney's fees from the settlement proceeds based on those findings.

**Equitable theories**

On appeal, Caggins attempts to raise quasi-estoppel as a counter-defense barring Potts's right to raise, on T.D.'s behalf, defenses to enforcement of Caggins's purported fee agreements. Quasi-estoppel precludes a party from asserting, to another's detriment, a right inconsistent with a position he has previously taken. *See Enochs v. Brown*, 872 S.W.2d 312, 317 (Tex. App.—Austin 1994, no writ). The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one in which he accepted a benefit. *Id.* Caggins did not raise quasi-estoppel in the district court, however, nor did he seek findings of fact and conclusions of law regarding that theory. As the party with the burden of proving quasi-estoppel, Caggins's failure to seek findings and conclusions regarding that theory waives it. *See Intec Systems, Inc. v. Lowrey*, 230 S.W.3d 913, 918-19 (Tex. App.—Dallas 2007, no pet.).

Caggins also claims that he is entitled to attorney's fees under quantum meruit. To recover under quantum meruit, a claimant must prove that: (1) valuable services were rendered;

15

(2) for the person sought to be charged; (3) the services were accepted, used, and enjoyed by the person sought to be charged; and (4) the acceptance, use, and enjoyment was under such circumstances as reasonably notified the person sought to be charged that the claimant, in performing such services, was expecting to be paid by the person sought to be charged. *See Enochs*, 872 S.W.2d at 321. Although we cannot find in the record that Caggins ever explicitly invoked "quantum meruit" in the district court, Caggins did raise arguments and present proof going to the substance of such a theory. He testified (and Johnson's attorney concurred) that he had been the plaintiffs' sole attorney during the prosecution of their claim; that he had performed some unspecified work in connection with State Farm and USAA's agreements to pay policy limits; that the ad litem, Potts, credited him with the federal government's $15,287.73 reduction in its medical lien and had recommended a $12,500 fee for that work and other efforts in connection with the State Farm payment (although Potts did not elaborate on the bases for these conclusions, and acknowledged that Caggins had refused to provide him an objective measure of the value of Caggins's services); and that Caggins had made several trips from Houston to Memphis and Bell County. The district court, further, made two findings to the effect that Caggins had failed to meet his burden of proving the reasonable value of his services to T.D.: Caggins (1) "declined to allow his case file to be examined by the attorney ad litem, declined to furnish a time sheet showing the time spent on the case and declined to give an estimate of the number of hours spent in representation of the case," and (2) "is claiming that he is entitled to a percentage of the amounts to be distributed to the Minor Plaintiff . . . and is not seeking compensation for his hourly work based on an hourly rate." In the absence of any attempt by Caggins to quantify the value of any legal services he provided T.D.

16

beyond his bare reliance on a claimed contingent-fee percentage,[7] the district court did not abuse its discretion in refusing to award Caggins attorney's fees under quantum meruit. *See Hoover Slovacek L.L.P. v. Walton*, 206 S.W.3d 557, 565-66 (Tex. 2006) (holding that law firm "no longer has a claim for quantum meruit" arising from services provided under a contingent-fee contract where it had failed to present evidence of the reasonable value of those services); *cf. Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818-19 (Tex. 1997) (bare contingent-fee percentage is insufficient evidence of reasonable and necessary attorney's fees).

## CONCLUSION

We overrule Caggins's issue on appeal and affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   February 7, 2008

---

[7] Nor does Caggins contend that he has conclusively proven the other elements of quantum meruit. *See* Tex. R. Civ. P. 297 (where trial court has made findings regarding one or more elements of a claim or defense, omitted unrequested elements, when supported by the evidence, are presumed in support of the judgment).

17