**Affirmed and Opinion Filed September 23, 2020**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-20-00169-CV**
_____

**WORLDVENTURES MARKETING, LLC D/B/A WORLDVENTURES,**
**Appellant**
**V.**
**TRAVEL TO FREEDOM, LLC, Appellee**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-04088-2019**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Browning
Opinion by Justice Carlyle

In this interlocutory appeal, WorldVentures Marketing, LLC d/b/a WorldVentures contends the trial court erred by denying its motion to compel arbitration of claims brought against it by Travel to Freedom, LLC (TTF). We affirm the trial court's order in this memorandum opinion. *See* TEX. R. APP. P. 47.7.

### Background

WorldVentures is a multilevel marketing company based in Plano, Texas. TTF is a limited liability company formed in about 2012 by then-spouses Adelina Morton and Donald Lee Morton, Jr. to act as a WorldVentures "Independent Representative."

Following their 2017 divorce, the Mortons disputed TTF's right to commissions from WorldVentures. In connection with that dispute, TTF filed this July 2019 lawsuit against WorldVentures and Mr. Morton, asserting claims for breach of contract, money had and received/unjust enrichment, declaratory relief, conversion/theft, breach of fiduciary duty, and conspiracy/aiding and abetting.

In its petition, TTF asserted (1) it "is the legal and rightful owner of the business center associated with WorldVentures Representative Agreement No. 870603 (hereinafter the 'TTF Agreement') [and] has the right to receipt of all commissions due and owing for products and services sold thereunder" and (2) "WorldVentures' actions grossly violate the TTF Agreement and accompanying policies and procedures related to treatment of representative agreements owned by spouses and changes related to same following separation or divorce," including section "7.1 Separation, Divorce, and Dissolution or Change of Ownership of a Business Entity." The petition also quoted several paragraphs from that described section.

WorldVentures filed a motion to abate and compel arbitration, contending (1) TTF's "Representative Agreement" with WorldVentures includes a provision requiring mandatory arbitration of "[a]ll disputes and claims relating to" the Representative Agreement and (2) TTF's claims fall within the scope of that provision. Attached to WorldVentures' motion was a declaration of its chief legal officer, Eric Haynes, in which he stated (1) "WorldVentures representatives based in

–2–

the United States generally complete their Representative Agreement through an electronic form, which requires the Representative to 'clickthrough' to accept the Representative Agreement and Representative Terms and Conditions"; (2) "[a] true and correct copy of a blank form of the Representative Agreement executed by Plaintiff with the attached Representative Terms and Conditions are attached hereto"; (3) "Plaintiff agreed to be bound by all such covenants and obligations found in the Representative Agreement, Representative Terms and Conditions, and WorldVentures Policies & Procedures"; and (4) "[a]ttached hereto as 'Exhibit A-3'. . . is a true and correct screenshot showing Plaintiff's Representative Number (870603) and confirming that Plaintiff did assent to all such covenants and obligations, including the arbitration provision(s) contained therein."

The attachments to Mr. Haynes' affidavit included a blank "WorldVentures Representative Agreement" form that contained "Representative Terms and Conditions" and stated "Revised January 26, 2019," and a copy of "WorldVentures Policies & Procedures" that stated "Effective February 21, 2019." Both of those documents contained arbitration provisions. The 2019 Policies & Procedures also contained a section 7.1 identical to the quotation in TTF's petition. The Exhibit A-3 screenshot stated, among other things, "ID #: 870603" and "TermsAndConditions: Dismissed=true|LastActionDate=7/18/2012."

In its response to WorldVentures' motion to compel arbitration, TTF argued in part (1) the Exhibit A-3 screenshot "does not on its face reflect that TTF agreed to anything"; (2) "even if this screenshot somehow showed that TTF agreed to WorldVentures' Representative Agreement and Policies & Procedures on the date indicated, July 18, 2012, the versions of WorldVentures' Representative Agreement and Policies & Procedures that it attached to its motion to compel arbitration, and which form the basis of its motion, are both from 2019—a full seven years after TTF purportedly agreed to the terms therein"; and (3) WorldVentures' pre-2019 arbitration provisions are illusory and unenforceable under *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002), because they do not state that WorldVentures' right to amend or modify the arbitration provision applies only retroactively and that some form of notice must be given before a modification goes into effect.

The attachments to TTF's response included a blank WorldVentures Representative Agreement form that stated "Ver. 5.1 Rev. 2011" and a copy of WorldVentures Policies & Procedures that stated "Revised November 1, 2011," both of which contained arbitration provisions that, unlike the 2019 arbitration provisions, did not include the clauses described in *Halliburton*. The 2011 Policies & Procedures did not contain the section 7.1 quoted in TTF's petition, but instead addressed husband-wife partnerships and divorce in section 4.24, which was titled "Separation of a WorldVentures Business" and contained terms that differed from the petition's quoted paragraphs.

TTF also attached an affidavit in which Ms. Morton testified (1) she has been a manager and member in TTF since its formation, (2) TTF "did not sign" the 2019 Representative Agreement or Policies and Procedures, (3) she "do[es] not recall agreeing electronically to be bound by all covenants and obligations found in WorldVentures' Representative Agreement, Representative Terms and Conditions and Policies & Procedures," and (4) "if TTF did in fact do so on July 18, 2012," the attached 2011 versions of those documents were the versions "in place" at that time.

In a supplement to its motion to compel arbitration, WorldVentures asserted, "Further substantiating Plaintiff's continuous and repeated acceptance of the mandate to arbitrate any claims it alleges to have against Defendant, Defendant proffers relevant excerpts of its Policies & Procedures manuals in effect between 2011 and 2019, true and correct copies of which are attached hereto as Exhibit B." The attached Exhibit B consisted of arbitration provisions from six versions of WorldVentures' Policies & Procedures, revised, respectively, March 2013; November 30, 2013; January 18, 2014; April 2014; October 2014; and June 2017. All of those provisions were identical to the 2011 arbitration provisions.

Following a hearing, the trial court signed an order denying WorldVentures' motion to abate and compel arbitration without stating the basis for that ruling.

**Analysis**

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that

agreement. *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Id*. We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Id*.; *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.) (explaining that in reviewing denial of motion to compel arbitration, "we apply a no-evidence standard to the trial court's factual determinations and a de novo standard to legal determinations"). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc*., 701 S.W.2d 238, 241–42 (Tex. 1985). There is no abuse of discretion when the court's decision is based on conflicting evidence, some of which reasonably supports the decision. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 709 (Tex. App.—Dallas 2010, no pet.).

In a nonjury proceeding where, as here, no findings of fact or conclusions of law were filed or requested,[1] we imply "all facts necessary to support the judgment and supported by the evidence." *Retamco Operating, Inc. v. Republic Drilling Co*., 278 S.W.3d 333, 337 (Tex. 2009) (quoting *BMC Software Belg., N.V. v. Marchand*,

---

[1] Though the parties' appellate arguments describe oral "findings" recited by the trial court, a trial court's oral statements from the bench do not generally constitute findings of fact. *See Intec Sys., Inc. v. Lowrey*, 230 S.W.3d 913, 918 (Tex. App.—Dallas 2007, no pet.) ("A court's oral statements 'cannot substitute' for findings and conclusions."); *Ifiesimama v. Haile*, 522 S.W.3d 675, 684 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (same). "Statements made by a trial court outside of properly filed written findings and conclusions do not limit an appellate court's review." *Larry F. Smith, Inc. v. The Weber Co*., 110 S.W.3d 611, 615 (Tex. App.—Dallas 2003, pet. denied).

–6–

83 S.W.3d 789, 795 (Tex. 2002)). If the implied findings are supported by the evidence, we uphold the trial court's judgment on any theory of law applicable to the case. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

"Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions." *Houston First Am. Savs. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983). The consequence of a judicial admission is that the admitted fact is conclusively established and the party is barred from later disputing it. *Id.*; *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000). To constitute a judicial admission, there must be a "clear, deliberate, and unequivocal" statement of fact. *Horizon/CMS Healthcare*, 34 S.W.3d at 905. A party waives the right to rely upon an opponent's judicial admissions unless the party objects to the introduction of evidence contrary to those admissions. *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989).

WorldVentures contends in four issues that the trial court committed reversible error by denying its motion to abate and compel arbitration because there was a valid agreement to arbitrate, TTF's claims were within the scope of that agreement, and the arbitration provision was not illusory. According to WorldVentures, (1) TTF's efforts "to artfully manufacture an evidentiary issue" fail, "as they ignore wholly WorldVentures' undisputed testimony that these agreements were electronic, 'clickthrough' agreements, and that the parties agreed to be bound by all the terms of the 2019 documents"; (2) "TTF's own pleadings also implicitly concede (and

judicially admit) TTF's consent to the so-called '2019 version' of the agreements" because "the language quoted in TTF's Petition is only in the 2019 agreements, and not in the 2012 agreements"; and (3) *Halliburton* should be limited to "employer–employee disputes," but even if its requirements apply here, "the 'savings clauses' set forth in the arbitration agreement in this case render the clause fully enforceable nonetheless."

First, to the extent WorldVentures seeks to rely on a "judicial admission" that TTF "consented to the 2019 agreements," the record does not show that the section 7.1 quoted in TTF's petition necessarily came from the 2019 documents. The petition is silent as to what version of WorldVentures' Policies & Procedures the quotation is from. Although the quoted section does not appear in the 2011 version, there were at least six additional versions in effect between 2012 and 2019. The record includes only the arbitration provision portions of those documents and does not show whether the quoted section 7.1 was unique to the 2019 version. Thus, the petition does not contain a "clear, deliberate, and unequivocal" statement of fact regarding consent to the 2019 agreements. *See Horizon/CMS Healthcare*, 34 S.W.3d at 905. Moreover, the record shows WorldVentures asserted no objection to TTF's evidence that it did not consent to those agreements. Therefore, WorldVentures has waived the right to rely on TTF's purported judicial admission. *See Marshall*, 767 S.W.2d at 700.

Second, we address WorldVentures' argument that the trial court's ruling is unsupported by the record "[b]ecause [Mr. Haynes'] testimony was undisputed, and because TTF's own Pleadings . . . expressly quoted from the 2019 documents as the basis for TTF's breach of contract claim." As described above, the record does not show TTF's petition "expressly quoted from the 2019 documents." As to Mr. Haynes' testimony, WorldVentures contends (1) "TTF's affidavit averring that it did not 'sign' the agreement, and that TTF's sole witness, in her individual capacity 'does not recall' agreeing to the terms of the 2019 agreement, wholly ignores that agreements can be reached without an actual 'wet-signature' on a paper document" and (2) "the testimony of WorldVentures' witness in this regard was undisputed—the agreement was reached electronically, by 'clickthrough,' and the parties agreed to all the terms and conditions of the 2019 documents." Though Mr. Haynes testified WorldVentures representatives "generally" complete their Representative Agreements "through an electronic form, which requires the Representative to 'clickthrough'" to accept the agreement, his testimony did not address whether TTF did so.

We cannot agree Mr. Haynes' statements constitute "undisputed" testimony that "the agreement was reached electronically, by 'clickthrough.'" Rather, Mr. Haynes attached a blank copy of the 2019 version to his affidavit and stated TTF "executed" that version. TTF disputed that contention with evidence that it "did not sign" the 2019 version. Mr. Haynes also stated TTF "agreed to be bound by all such

–9–

covenants and obligations found in the Representative Agreement, Representative Terms and Conditions, and WorldVentures Policies & Procedures," but that statement did not specify which versions were agreed to and thus does not conclusively demonstrate agreement to the 2019 versions.

Finally, it is undisputed that none of WorldVentures' pre-2019 arbitration provisions in the record comply with *Halliburton*'s requirements. Though WorldVentures contends *Halliburton* should be limited to the employer–employee context and thus is inapplicable here, it cites no authority for that position and we have found none. *See Morrison v. Amway Corp.*, 517 F.3d 248, 257 (5th Cir. 2008) (applying *Halliburton* requirements in lawsuit by distributors against multilevel marketing corporation). We conclude WorldVentures' pre-2019 arbitration clauses in the record are illusory and unenforceable. *See Halliburton*, 80 S.W.3d at 569–70.

Because the record reasonably supports a determination that there was no enforceable arbitration agreement between TTF and WorldVentures, we conclude the trial court did not abuse its discretion by denying the motion to abate and compel arbitration. *See RSR Corp.*, 309 S.W.3d at 709. We affirm the trial court's order.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

200169F.P05

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WORLDVENTURES
MARKETING, LLC D/B/A
WORLDVENTURES, Appellant

No. 05-20-00169-CV        V.

TRAVEL TO FREEDOM, LLC,
Appellee

On Appeal from the 471st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 471-04088-
2019.
Opinion delivered by Justice Carlyle.
Justices Molberg and Browning
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee TRAVEL TO FREEDOM, LLC recover its costs of this appeal from appellant WORLDVENTURES MARKETING, LLC D/B/A WORLDVENTURES.

Judgment entered this 23rd day of September, 2020.