ALMA INVESTMENTS, INC. and Bahia Mar Maintenance Association, Appellants,

v.

BAHIA MAR CO-OWNERS ASSOCIATION, Appellee.

No. 13–97–706–CV.

Court of Appeals of Texas, Corpus Christi.

June 24, 1999.

Rehearing Overruled Aug. 12, 1999.

Paul Y. Cunningham, P.T. Moore, Jr., South Padre Island, for Appellants.

David C. Garza, Garza & Garza, Brownsville, for Appellee.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION

Opinion by Justice HINOJOSA.

Appellants, Alma Investments, Inc. and Bahia Mar Maintenance Association (collectively "Alma"), appeal from the trial court's grant of a declaratory judgment in favor of Bahia Mar Co–Owner's Association ("BMCA"). By four points of error, Alma contends the trial court erred in finding that: (1) certain exemption provisions are against public policy, (2) BMCA's cause of action was not barred by limitations, (3) BMCA's cause of action was not barred by the doctrines of waiver and estoppel, and (4) BMCA's cause of action was not barred by the doctrine of laches. We affirm.

### A.  BACKGROUND AND PROCEDURAL HISTORY

The property involved in this case is a group of condominium regimes called the Bahia Mar Project ("Project"). The Project was originally developed by Marisol Corporation in 1973. At that time, a maintenance agreement, entitled Bahia Mar Maintenance Association ("Agreement"), and recorded in the Miscellaneous Deed Records of Cameron County, set forth the maintenance obligations of the owners and lessees in the Project. The Bahia Mar Maintenance Association was created in the document to collect the monthly fees and provide the services for the general benefit of the Project owners. The Agreement was amended in 1975 and entitled "Amended Bahia Mar Maintenance Association".[1]

Alma is a successor or assignee of Marisol Corporation. Alma purchased the Project in 1991. BMCA is a non-profit corporation organized to provide for the

1. The provisions at issue in this case are the same in each document. We will reference the amended document which we will also refer to as the "Agreement."

"management, maintenance, preservation, and architectural control" of Regimes 1–4 of the Project. The articles of incorporation for BMCA were filed in 1985. In 1987, BMCA became the owner of a leasehold interest in Unit # 3, Building "B" in Regime 1 of the Project.

In 1994, BMCA requested a declaratory judgment to interpret certain rights and obligations within the Agreement. The trial judge found section 2 of the Agreement, authorizing the exemption of units from the maintenance charge, void, unenforceable, and against public policy. The court declared that "the facilities shall be maintained and services rendered by the Bahia Mar Maintenance Association through the assessment and collection of the maintenance charges *pro rata* by all units. . . ." Alma appeals from the trial court's declaratory judgment.

### B. Affirmative Defenses

■ By its second, third, and fourth points of error, Alma complains that BMCA's cause of action was barred by the four-year statute of limitations, waiver and estoppel, and laches because BMCA received its leasehold interest in the condominium regime in 1987 and did not file suit until 1994, during which time it acquiesced to the exemption of Alma's units.

■ A party asserting an independent ground of recovery or an affirmative defense in a trial before the court must request findings in support thereof in order to avoid waiver. *Augusta Dev. Co. v. Fish Oil Well Serv. Co.*, 761 S.W.2d 538, 542 (Tex.App.—Corpus Christi 1988, no writ); *see also* Tex.R. Civ. P. 94 (Vernon 1979). If the findings filed by the trial court do not include any element of the ground of recovery or defense ·asserted, failure to request additional findings relevant thereto effects a waiver of the ground or defense. *Augusta*, 761 S.W.2d at 542 (citing *1st Coppell Bank v. Smith*, 742 S.W.2d 454, 464–65 (Tex.App.—Dallas 1987, no writ); *Traweek v. Larkin*, 708 S.W.2d 942, 947 (Tex.App.—Tyler 1986, writ ref'd

n.r.e.); *Pinnacle Homes, Inc. v. R.C.L. Offshore Eng'g Co.*, 640 S.W.2d 629, 630 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Elliott v. Bowden*, 564 S.W.2d 825, 828 (Tex.App.—Corpus Christi 1978, writ ref'd n.r.e.)); *see also* Tex.R. Civ. P. 299.

According to the record, on June 19, 1997, Alma asked the trial court to make findings of fact and conclusions of law. The trial court filed its findings of fact and conclusions of law on July 7, 1997, however, it did not make any findings or conclusions on Alma's affirmative defenses of limitations, waiver and estoppel, or laches. Alma did not file a request for specified additional or amended findings of fact and conclusions of law. *See* Tex.R. Civ. P. 298. Accordingly, we hold Alma has waived the affirmative defenses of limitations, waiver and estoppel, and laches. Alma's second, third and fourth points of error are overruled.

### C. Exemption of Units

By its first point of error, Alma complains the trial court erred in finding the provisions in the Agreement allowing the developer to exempt units from "maintenance fees" are arbitrary and capricious, against public policy, void, and unenforceable. Alma contends that Texas condominium law does not apply to maintenance charges because they are not assessments, but rather charges for the use of land owned by Alma. Thus, Alma argues, the maintenance charges are not against public policy.

The relevant provisions of the Agreement, establishing the maintenance charges, provide:

2. Developer, its successors or assigns, reserves and retains the right at any time, and from time to time during the term of this agreement to suspend, reduce, waive or exempt any tract, residential unit, commercial unit and Bahia Mar owner or Lessee from the payment of the mainte-

nance charge applicable to such use as in its sole judgment the needs of Bahia Mar Project may require. Developer shall have the right to reinstate any waived, reduced, suspended or exempted monthly maintenance charge at any time, and from time to time, during the term of this agreement as in its sole judgment the needs of Bahia Mar Project may require. All decisions by Developer with respect to waiving, reducing, suspending, exempting or reinstating the payment of a monthly maintenance charge shall be binding upon and conclusive upon all persons and parties in interest.

5. Developer hereby grants to all Bahia Mar tract or unit owners or lessees who are current in the payment of maintenance charges applicable to their unit or tract or who have been exempted from paying such maintenance charge, the nonexclusive right to use, in conjunction with Developer, the common facilities, developed upon the Bahia Mar Project, which shall include the initial common facilities listed on the attached Exhibit "C", and any additional common facilities which may be constructed thereon.

6. The Developer, its successors and assigns, as Administrator shall use the maintenance fund for the following purposes only:

   (a) the developing, improving or maintaining of safety and health facilities and projects within the Bahia Mar Project;

   (b) the developing, improving, maintaining, and constructing of recreational or other areas and facilities for owners or lessees of tracts or units in the Bahia Mar Project within the Bahia Mar Project or other property;

   (c) the improving and maintaining of roads, seawalls, and utility lines when such utility lines and roads

are not being maintained by governmental bodies or utility companies;

   (d) the providing of services to owners or lessees of tracts or units within the Bahia Mar Project;

   (e) all other purposes which Administrator may consider to be of a *general benefit* or useful to Bahia Mar owners; and

   (f) the payment of all costs and expenses in order to accomplish and fulfill the terms and purposes of this maintenance agreement, including, but not limited to, administrative expense and compensation to the administrator of the maintenance fund.

(Emphasis added).

The trial court declared section 2 of the Agreement to be void and unenforceable and against public policy. The court then ordered that Alma or any of its successors or assigns "in interest to them shall not suspend, reduce, waive or exempt any tract, residential unit, commercial unit, Bahia Mar owner or Bahia Mar lessee from the maintenance charges applicable to it."

### 1. *Standard of Review*

Declaratory judgments are reviewed under the same standards as other judgments and decrees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.010 (Vernon 1997). The trial court's conclusion, being one of law, will be upheld on appeal if it can be sustained on any legal theory supported by the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984).

The courts will not enforce a contract whose provisions are against public policy. *Sacks v. Dallas Gold & Silver Exch., Inc.*, 720 S.W.2d 177, 180 (Tex. App.—Dallas 1986, no writ) (citing *Baron v. Mullinax, Wells, Mauzy & Baab, Inc.*, 623 S.W.2d 457, 461 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.)). The Texas Supreme Court has applied the public policy doctrine found in the Restatement (Sec-

ond) of Contracts. *Beck v. Beck*, 814 S.W.2d 745, 748–49 (Tex.1991); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681–82 (Tex.1990). Section 178 of the Restatement provides:

### § 178 When a Term Is Unenforceable on Grounds of Public Policy

(1) *A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable* or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.

\* \* \* \* \*

(3) In weighing a public policy against enforcement of a term, account is taken of

(a) the strength of that policy as manifested by legislation or judicial decisions,

(b) the likelihood that a refusal to enforce the term will further that policy,

(c) the seriousness of any misconduct involved and the extent to which it was deliberate, and

(d) the directness of the connection between that misconduct and the term.

RESTATEMENT (SECOND) OF CONTRACTS § 178 (1981) (Emphasis added).

#### 2. *Analysis*

■ Section 81.0011 of the property code provides that the Condominium Act[2] applies to all condominium regimes created before January 1, 1994. *See* TEX. PROP. CODE ANN. § 81.0011 (Vernon 1995). We conclude the maintenance charges assessed against each owner in the Project fall under section 81.204 of the property code, which provides:

#### Sec. 81.204. Maintenance of Condominium

(a) An apartment owner in a condominium regime is responsible for the apartment owner's pro rata share of:

(1) the expenses to administer the condominium regime and to maintain and repair the general common elements;

(2) in proper cases, the expenses to administer the limited common elements of the buildings in the condominium regime; and

(3) other expenses approved by the council of owners.

(b) An apartment owner in a condominium regime is not exempted from the obligation under this section to contribute toward the expenses of the condominium regime by waiving the use of the common elements or abandoning the apartment.

TEX. PROP.CODE ANN. § 81.204 (Vernon 1995).

Section 6(f) of the Agreement provides that the fees collected are to be used for administrative expenses. This is specifically regulated by section 81.204(a)(1). Also, section 6 of the Agreement sets out the purposes for which the fees are to be used: to develop, improve, and maintain the facilities within the Project. We interpret this to mean the common facilities referred to in section 5 of the Agreement.

■ The definition of the term "common facilities" is key to the controversy in this appeal. Alma argues that the common facilities are not part of any condominium regime, but rather encompass land owned by Alma; thus, they should not have to charge themselves for the use of their own land. BMCA contends that "common facilities" is really just a convenient term for the common elements, and Alma needs to pay its *pro rata* share for the maintenance of these "facilities" in accordance with the Condominium Act.

Section 81.002(6) of the property code defines "general common elements" as:

---

**2.** TEX. PROP.CODE ANN. ch. 81 (Vernon 1995).

(6) "General common elements" means the property that is part of a condominium regime other than property that is part of or belongs to an apartment in the regime, including:

(A) land on which the building is erected;

(B) foundations, bearing walls and columns, roofs, halls, lobbies, stairways, and entrance, exit, and *communication ways;*

(C) basements, flat roofs, *yards,* and *gardens*, except as otherwise provided;

(D) premises for the lodging of janitors or persons in charge of the building, except as otherwise provided;

(E) compartments or installation of central services such as power, light, gas, water, refrigeration, central heat and air, reservoirs, water tanks and pumps, and *swimming pools* ; and

(F) elevators and elevator shafts, garbage incinerators, *and all other devices and installations generally existing for common use.*

TEX. PROP.CODE ANN. § 81.002(6) (Vernon 1995) (Emphasis added).

The list of "common facilities" listed in the Agreement at Exhibit C is important in determining whether the exemption provisions violate the legislative intent of the Condominium Act. Exhibit C provides:

The common facilities of Bahia Mar are designated as:

1. Sea wall,
2. Retaining walls,
3. Walkways,
4. Steps to the beach,
5. Swimming pool # 1,
6. Two tennis courts,
7. Roadways from State Park Highway No. 100 (excluding the parking spaces),
8. Lagoon, and
9. All landscaped areas.

We conclude the walkways fall under section 81.002(6)(B) as communication ways, the swimming pool falls under section 81.002(6)(E), and the lagoon and landscaped areas fall under section 81.002(6)(C). The seawall, retaining walls, steps to the beach, and roadways are essential to the property and obviously common elements. The fact that Alma uses the maintenance fees to maintain the seawall, retaining walls, steps to the beach, and roadways, and the fees are required by the Agreement, is evidence that these installations are indeed common elements. We conclude the seawall, retaining walls, steps to the beach, and roadways fall under section 81.002(6)(F) as devices and installations generally existing for common use. Finally, while tennis courts are not listed as "common elements" in the property code, they are listed in the Agreement as "common facilities." We conclude they exist for the common use and fall under section 81.002(6)(F).

The purpose for the maintenance charges is to provide for the general benefit of the Project through the maintenance, improvement, and construction of recreational and other facilities in and for the Project. Section 81.204 of the property code encompasses this purpose and explicitly states that each apartment owner shall pay his *pro rata* share. TEX. PROP.CODE ANN. § 81.204 (Vernon 1995). Alma, as the developer, is not exempt from paying its share. *See Fairway Villas Venture v. Fairway Villas Condominium Assoc.,* 815 S.W.2d 912, 915 (Tex.App.—Austin 1991, no writ).

When we weigh the public policy set out in section 81.204 of the property code against enforcement of the exemption provisions, we find a strong legislative intent, as established by the specific wording of the statute, that all apartment owners must pay their *pro rata* share of the maintenance expenses of the condominium regime. When fees are not paid, there is a risk of injury to the public from poorly

maintained facilities. For example, if the swimming pool is not adequately cleaned, chlorinated, and repaired, the health and safety of all who use it will be at risk. Accordingly, we hold the exemption provisions are against public policy and, therefore, void.[3]

We hold the trial court did not err in finding that the exemption provisions are against public policy, void, and unenforceable. Appellant's first point of error is overruled.

The judgment of the trial court is affirmed.

---

**3.** We note that Alma has established, through financial reports, that any deficits in maintenance costs are paid by them. However, there is no guarantee Alma will continue to pay deficits in the future. The deletion of the exemption provisions will help insure there is an adequate maintenance fund.