TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00231-CV






Junior Myers, Appellant


v.


Cheryl Ann Myers, Appellee






FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT

NO. 14,782, HONORABLE C. W. DUNCAN, JR., JUDGE PRESIDING





M E M O R A N D U M O P I N I O N

 

 Charles Franklin Wardell ("Junior") Myers, II appeals from a final divorce decree
awarding Cheryl Ann ("Tammy") Myers one-half of the net equity in a 159.06-acre parcel of land
near Evant. Junior contends that the district court erred in characterizing the parcel as community
property subject to the court's division of the marital estate. (1) He brings two issues, both of which
rest solely upon his claim that the district court erred in failing to enforce a "Partition and Exchange

 Agreement" ("the Agreement") that operated to establish the parcel as his separate property. (2) We
overrule Junior's issues and affirm.

 The final divorce decree makes no reference to the "Partition and Exchange
Agreement" upon which Junior relies. After the decree was signed, both parties requested findings
of fact and conclusions of law and submitted proposed findings. See Tex. R. Civ. P. 296. Junior's
submission included a proposed finding that "[t]he Court did not enforce the Partition and Exchange
Agreement signed by the parties during marriage." The district court ultimately adopted and signed
Tammy's proposed findings of fact and conclusions of law, which made no mention of the
Agreement but stated that the 159.06 acres of land were acquired by both parties during the marriage. 
Junior did not object to these findings, nor did he request additional or amended findings of fact and
conclusions of law. See Tex. R. Civ. P. 298.

 There is authority suggesting that Junior's failure to seek additional or amended
findings concerning the enforceability of the Partition and Exchange Agreement waived that issue
on appeal. (3) In any event, there is legally and factually sufficient evidence to support an implied
finding by the district court that the Agreement was ineffective and unenforceable. (4) The district court first addressed whether Junior and Tammy had been married at all. 
Tammy filed for divorce from Junior in 2002. In his answer, Junior asserted that there was "no
existing marriage between the parties." The district court heard evidence regarding the existence of
a marriage and concluded that, although the pair were never ceremonially married, a common-law
marriage had existed between the parties beginning on January 1, 1995.

 Proceeding to the property division, the district court heard evidence regarding the
purchase of the 159.06-acre parcel and the execution of the "Partition and Exchange Agreement." 
In 1998, before closing on the parcel, Junior obtained a printed "Partition and Exchange Agreement
Concerning 159.06 Acres" from a lawyer who had previously represented Tammy. Junior introduced
into evidence a copy of the document executed by both himself and Tammy. However, prior to the
document being signed, the printed text of the document had been modified by handwritten
alterations that were consistent with Junior's position in the divorce that no marriage existed between
the parties. For example, the printed text of the preamble was modified as follows (handwritten
additions designated by italics; deletions by strikeouts):


This agreement is made by JUNIOR MYERS, Husband single man, and TAMMY
DIAMICIS, Wife Cheryl Ann DeAmicis, friend. We are already not married at
common law, and we are making this agreement to set out in writing our
understandings concerning this marriage friendship.



Similarly, under the heading "Confirmation of Separate Property," the document listed "Separate
Property of Husband Junior." But not all references to "husband" and "marriage" in the document
were modified in this manner. 

 The family code permits "spouses" to enter into agreements to partition or exchange
their community property into separate property. Tex. Fam. Code Ann. § 4.102 (West 2006). 
However, a partition or exchange agreement is not enforceable if the party against whom
enforcement is requested proves that the party did not sign the agreement voluntarily or the
agreement was unconscionable when it was signed. Id. § 4.105 (West 2006). "Voluntary" execution
under section 4.105 is intentional and the product of free will. Sheshunoff v. Sheshunoff, 172
S.W.3d 686, 695 (Tex. App.--Austin 2005, pet. denied). In Sheshunoff, we explained that "the
presence of such factors as fraud, duress, and undue influence may bear upon the inquiry" of whether
a partition and exchange agreement was involuntarily executed, but they are neither necessary nor
always sufficient to establish involuntary execution. Id. at 697. Instead, we consider evidence of
the common-law defenses as they relate "to the controlling issue of whether the party resisting
enforcement executed the agreement voluntarily." Id. In the record before us, there is evidence of
factors that, when considered together, would support an implied finding by the district court that
the Partition and Exchange Agreement was involuntarily executed, ineffective, and unenforceable. 

 Perhaps the most significant factor is that it is unclear whether the "Partition and
Exchange Agreement," as modified by the parties, would fall within chapter 4 of the family code,
as it manifests the parties' understanding and intent that they were not married and had merely a
"friendship." Additionally, the circumstances surrounding the execution of this agreement also tend
to belie a voluntary act to partition marital property. Tammy described these circumstances: "We
had been fighting for quite a while, and he threw those [papers] in my face and told me I had to sign
them." She elaborated that Junior had "screamed at [her] for two hours." In explaining why certain
terms in the Agreement were crossed out, Tammy testified, "When it is signed on here, and there's
some things crossed out on it, and it was done because when you get yelled at constantly or have a
gun pulled on you, yes, sir, you do change things." (5) She also recounted that these events had
occurred in their bedroom, not in any public place, and that she had never seen another page of the
document containing what purported to be her notarized additional signature alongside Junior's. 
These circumstances resemble the types of influences that have been held capable of overcoming free
will and establishing the common-law duress defense. Sheshunoff, 172 S.W.3d at 697 (citing
Matelski v. Matelski, 840 S.W.2d 124, 128-29 (Tex. App.--Fort Worth 1992, no writ)); see also
Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006) (characterizing duress "as the result of threats
which render persons incapable of exercising their free agency and which destroy the power to
withhold consent").

 Considering all of these circumstances together, legally and factually sufficient
evidence would support an implied finding that Tammy did not voluntarily execute an agreement
to partition marital property. Therefore, the district court did not err in refusing to enforce the
"Partition and Exchange Agreement." We overrule Junior's issues and affirm the district court's
judgment. 


 

 Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: December 8, 2006 

1. The district court in effect required Junior to purchase the value of Tammy's one-half share
of the equity in the parcel but reimbursed Junior, from the community estate, the value of an initial
down payment on the property purchase that he had made with his separate property. To determine
the amount Junior would pay Tammy for her interest, the district court (1) determined the fair market
value of the 159.06 acres, (2) subtracted the amount of Junior's down payment, (3) subtracted the
amount of the community debt on the note on the property; and (4) then split the remaining amount
to each party.
2. Junior's first issue challenges the district court's failure to enforce the Agreement so as to
characterize the parcel as community property. His second issue challenges whether the court had
jurisdiction over the parcel as part of the community estate and therefore erred in awarding Tammy
a portion of the parcel's appreciated value.
3. By characterizing the parcel as separate rather than community property, the Partition and
Exchange Agreement would have operated as an affirmative defense to Tammy's proposed division
of the marital estate. A party asserting an independent ground of recovery or an affirmative defense
in a trial before the court must request findings in support thereof in order to avoid waiver. Cotten
v. Weatherford Bancshares, Inc., 187 S.W.3d 687, 708 (Tex. App.--Fort Worth 2006, pet. filed);
Alma Invs., Inc. v. Bahia Mar Co-Owners Ass'n, 999 S.W.2d 820, 822 (Tex. App.--Corpus Christi
1999, pet. denied). If the findings filed by the district court do not include any element of the ground
of recovery or defense asserted, failure to request additional findings relevant thereto effects a waiver
of the ground or defense. Alma Invs., Inc., 999 S.W.2d at 820. Because the Agreement operated as
a defense to Tammy's proposed division of the marital estate, and the district court did not make any
formal findings or conclusions regarding the Agreement, Junior needed to request additional or
amended findings in order to avoid waiving the issue. See Gentry v. Squires Constr., Inc., 188
S.W.3d 396, 410 (Tex. App.--Dallas 2006, no pet.). 
4. The record reflects that the district court did hear evidence regarding the Partition and
Exchange Agreement and requested additional briefing regarding its enforceability. What purport
to be copies of this briefing are contained in the appendices to the parties' appellate briefs (though
not in the appellate record), along with a letter purportedly from the district court stating that it was
"of the opinion that the attempted partition is ineffective, therefore, the property is part of the
community." Strictly speaking, this letter is not a part of the appellate record. See In re Naylor, 160
S.W.3d 292, 295 (Tex. App.--Texarkana 2005, pet. denied). Furthermore, even if the letter was
properly before this Court, there is authority stating that letters from the district court cannot
constitute findings of fact and conclusions of law. See Mondragon v. Austin, 954 S.W.2d 191, 193
(Tex. App.--Austin 1997, pet. denied) (citing Cherokee Water Co. v. Gregg County Appraisal Dist.,
801 S.W.2d 872, 878 (Tex. 1990)); see also Roberts v. Roberts, 999 S.W.2d 424, 436 (Tex.
App.--El Paso 1999, no pet.) (reviewing trial court letter or other "memorandum of decision" as if
it were formal finding appears "to obviate Rule 296 and constitutes an injustice"). Nor could we
look to any comments from the bench to ascertain the bases for the district court's ruling. County
of Dallas v. Poston, 104 S.W.3d 719, 722 (Tex. App.--Dallas 2003, no pet.) (citing Nesmith v.
Berger, 64 S.W.3d 110, 119 (Tex. App.--Austin 2001, pet. denied)). Nonetheless, as Tammy does
not assert that Junior waived his right to contend that the Agreement should have been enforced,
neither party disputes that the district court found the Agreement ineffective, and sufficient evidence
supports that conclusion, we will proceed to address that issue. 
5. Tammy never elaborated on her assertion that Junior "pulled" a gun on her. Following her
statement, the district court instructed Tammy to "[j]ust answer the question and do not volunteer
anything." The gun allegation was never again mentioned by either party.