

# NUMBER 13-06-00368-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

SCOGGINS CONSTRUCTION
COMPANY, INC., ET AL.,                                                                    Appellants,

v.

DEALERS ELECTRICAL SUPPLY CO.,                                              Appellee.

---

On appeal from the 398th District Court of Hidalgo County, Texas.

---

# MEMORANDUM OPINION ON REMAND

**Before Justices Rodriguez, Garza, and Benavides**
**Memorandum Opinion on Remand by Justice Garza**

This case is before us on remand from the Texas Supreme Court. *See Dealers Elec. Supply Co. v. Scoggins Constr. Co., Inc.*, No. 08-0272, 2009 Tex. LEXIS 475, at *1 (Tex. July 3, 2009). In this case, the trial court entered the complained-of judgment in favor of appellee, Dealers Electrical Supply Company ("Dealers"), who was left unpaid after an electrical subcontractor on a bonded public-works project walked off the job. By four

issues, which we categorize as three, appellants, Scoggins Construction Company ("SCC") and Bill Scoggins, SCC's president, argue: (1) the McGregor Act was Dealers' mandatory and exclusive remedy and that Dealers was precluded from asserting either a breach of contract action pertaining to a joint-check agreement, or a cause of action under the Texas Construction Trust Fund Act, *see* TEX. GOV'T CODE ANN. § 2253.021, .041, .073 (Vernon 2008) (the "McGregor Act"); *see also* TEX. PROP. CODE ANN. § 162.001-.033 (Vernon 2007 & Supp. 2009) (the "Trust Fund Act"); (2) there was insufficient evidence to support the trial court's judgment that SCC violated the joint-check agreement; and (3) there was insufficient evidence that Bill, in his individual capacity, and SCC violated the Trust Fund Act.[1]

On original submission, this Court concluded that the McGregor Act was Dealers' mandatory and exclusive remedy and that Dealers was precluded from suing SCC and Bill for violating the Trust Fund Act and, under the common law, for breach of the joint-check agreement. *Scoggins Constr. Co., Inc. v. Dealers Elec. Supply Co.*, No. 13-06-368-CV, 2007 Tex. App. LEXIS 9874, at **23-28 (Tex. App.–Corpus Christi Dec. 20, 2007), *rev'd by Dealers Elec. Supply Co.*, 2009 Tex. LEXIS 475, at *27. The supreme court denied Dealers' initial petition for review but later granted Dealers' motion for rehearing and concluded that the McGregor Act was not Dealers' mandatory and exclusive remedy and that the joint-check agreement was not a debt guarantee. *See id.* at **20, 26-27; *see also Dealers Elec. Supply Co. v. Scoggins Constr. Co., Inc.*, No. 08-0272, 2008 Tex. LEXIS 604, at **1, 26 (Tex. June 20, 2008). Accordingly, the court reversed and remanded the

---

[1] Given the Texas Supreme Court's disposition in *Dealers Electric Supply Co. v. Scoggins Construction Company, Inc.*, we need not discuss in this opinion SCC and Bill's first appellate issue pertaining to the McGregor Act. *See* TEX. R. APP. P. 47.1; *see also* No. 08-0272, 2009 Tex. LEXIS 475, at *1 (Tex. July 3, 2009).

case, directing us to consider SCC and Bill's arguments pertaining to the sufficiency of the evidence supporting Dealers' causes of action for breach of the joint-check agreement and violation of the Trust Fund Act. We affirm.

## I. BACKGROUND[2]

SCC entered into a public-work contract with the Mercedes Independent School District ("M.I.S.D.") in February 2001 for the construction of an elementary school in Mercedes, Texas. Under the contract, SCC was to be paid $5,751,000. SCC subcontracted with Arturo Bujanos d/b/a Diamond Industries ("Diamond") and Dealers to provide electrical labor and materials to the project. SCC, Diamond, and Dealers entered into a joint-check agreement whereby Dealers extended credit to Diamond, and SCC agreed to pay Dealers and Diamond by joint-check for materials and services "furnished . . . into the construction of the improvements located at Mile 2 East ("Project") . . . ." Relying on this agreement, Dealers and Diamond provided materials and services to the project between January 1, 2002, and May 2, 2002. However, in early May 2002, Diamond walked off the job and allegedly absconded with materials that Dealers had supplied to the project and for which SCC had not paid. On May 10, 2002, Bill, on behalf of SCC, sent Dealers a letter requesting that Dealers no longer allow Diamond to incur any additional charges associated with the project.[3]

---

[2] The factual and procedural background in this case has been explained in this Court's memorandum opinion on original submission and in the supreme court's opinion; therefore, we will only recount those facts which are pertinent to the remaining issues on appeal. *See* TEX. R. APP. P. 47.1; *see also Dealers Elec. Supply Co.*, 2009 Tex. LEXIS 475, at **1-5; *Scoggins Constr. Co., Inc. v. Dealers Elec. Supply Co.*, No. 13-06-368-CV, 2007 Tex. App. LEXIS 9874, at **3-8 (Tex. App.–Corpus Christi Dec. 20, 2007), *rev'd by Dealers Elec. Supply Co.*, 2009 Tex. LEXIS 475, at *27.

[3] Ernesto Garcia, an inside salesman with Dealers, testified that he was aware of Bill's letter directing Dealers to stop providing materials to Diamond. Garcia stated that Dealers did not provide materials to Diamond after Dealers received Bill's letter and that subsequent invoices generated pertained to back orders that were placed several weeks before Diamond walked off the job.

3

Because Diamond had walked off the job, SCC contracted with Borchers Electric Company ("Borchers") and Ace Fire and Sound ("Ace") to finish the project. SCC contended that it paid: (1) Borchers $107,440.27 to complete the electrical work on the project; (2) Ace $34,640.00 to finish an alarm system; and (3) the Law Offices of William F. Kimball $8,503.43 in legal fees to file a breach of contract lawsuit against Diamond to recover damages and missing materials. Dealers sent letters to SCC on May 15, 2002, May 23, 2002, June 24, 2002, March 14, 2003, and March 20, 2003, demanding payment for materials provided to Diamond for the project. SCC refused to make the requested payments to Dealers.

Dealers later sued SCC and Bill for, inter alia, breaching the joint-check agreement and violating the Trust Fund Act. *See* TEX. PROP. CODE ANN. §§ 162.001-.033. After a bench trial, the trial court concluded that: (1) SCC and Bill violated the Trust Fund Act by receiving payment from the M.I.S.D. for electrical materials supplied to the project and failing to pay Dealers for them; and (2) SCC breached the joint-check agreement for refusing to pay Dealers for the materials provided to the project. SCC, Bill, and Diamond were held jointly and severally liable for $78,123.59, in addition to prejudgment interest, attorney's fees, and costs of court. The trial court issued numerous findings of fact and conclusions of law, including the following: (1) the materials for which Dealers was not paid were furnished to the project; (2) the M.I.S.D. paid SCC for the materials that Dealers provided; and (3) by failing to pay Dealers for the materials provided, SCC and Bill violated the Trust Fund Act.

4

## II. STANDARD OF REVIEW

### A. Review of the Trial Court's Findings of Fact

In an appeal from a bench trial, the trial court's findings of fact "have the same force and dignity as the jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex. App.–Dallas 1997, writ denied) (en banc). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Anderson*, 806 S.W.2d at 794. Fact findings, however, are not conclusive when, as in this case, a complete reporter's record appears in the record. *City of Corpus Christi v. Taylor*, 126 S.W.3d 712, 717 (Tex. App.–Corpus Christi 2004, pet. dism'd) (citing *Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex. App.–San Antonio 1995, writ denied)); *see Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex. App.–Houston [14th Dist] 1985, writ ref'd n.r.e.). Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a "matter of law" or there is "no evidence" to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). Generally, attacks on the sufficiency of the evidence supporting findings of fact "must be directed at specific findings of fact, rather than at the judgment as a whole." *De Arrellano v. State Farm Fire & Cas. Co.*, 191 S.W.3d 852, 855 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (citing *Zagorski v. Zagorski*, 116 S.W.3d 309, 319 (Tex. App.–Houston [14th Dist.] 2003, pet. denied)).

Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.

2005). A legal sufficiency challenge may only be sustained when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). In evaluating the evidence's legal sufficiency, "we credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006) (citing *City of Keller*, 168 S.W.3d at 827); *see Am. Interstate Ins. Co. v. Hinson*, 172 S.W.3d 108, 114 (Tex. App.–Beaumont 2005, pet. denied). The trial court, as fact finder, determines the credibility of the witnesses and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819; *McGalliard*, 722 S.W.2d at 697. Furthermore, in reviewing the sufficiency of the evidence, we may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

In conducting a factual sufficiency review, we consider and weigh all of the evidence in the case and set aside the verdict and remand the cause for a new trial, if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, regardless of whether the record contains some "evidence of probative force" in support of the verdict. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761-62 (Tex. 2003). The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict. *Id.*

6

**B. Review of the Trial Court's Conclusions of Law**

A party may not challenge conclusions of law for factual sufficiency, but we may review conclusions of law to determine their correctness based upon the facts. *Citizens Nat'l Bank v. City of Rhome*, 201 S.W.3d 254, 256 (Tex. App.–Fort Worth 2006, no pet.). We will uphold a conclusion of law if the judgment can be supported on any legal theory supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Tex. Dep't of Pub. Safety v. Stockton*, 53 S.W.3d 421, 423 (Tex. App.–San Antonio 2001, pet. denied). We review conclusions of law de novo, *see State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996), and we will not reverse them unless they are erroneous as a matter of law. *Stockton*, 53 S.W.3d at 423.

### III. THE TRUST FUND ACT

In their third and fourth issues, SCC and Bill contend that there was insufficient evidence to support the trial court's conclusion that they violated the Trust Fund Act. Dealers counters by arguing that SCC and Bill misapplied trust funds by refusing to pay Dealers for the materials provided to the project even after Dealers had notified SCC and Bill of the amounts owed. Dealers further argues that: (1) the evidence demonstrates that Bill exercised control over the dispersion of the trust funds, making him individually liable as a trustee for misapplying trust funds; and (2) SCC and Bill did not conclusively establish their affirmative defenses with competent evidence.

**1. Applicable Law**

Under section 162.001 of the Trust Fund Act, payments made to a contractor or a subcontractor pursuant to a construction contract for the improvement of real property are considered to be trust funds. TEX. PROP. CODE ANN. § 162.001(a) (Vernon 2007); *see*

7

*Holladay v. CW&A*, 60 S.W.3d 243, 246 (Tex. App.–Corpus Christi 2001, pet. denied). Moreover, section 162.003 of the Act provides that a subcontractor who labors or who furnishes labor or material for the construction or repair of an improvement on real property is a beneficiary of any trust funds paid by or received in connection with the improvement. TEX. PROP. CODE ANN. § 162.003. The contractor, or an officer of a contractor who receives trust funds or who had control or discretion of the trust funds, is a trustee of the trust funds. *Id.* § 162.002.

A trustee misapplies trust funds if it "intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust fund." *Id.* § 162.031(a). "A party who misapplies trust funds under the Trust Fund Act is subject to civil liability to trust-fund beneficiaries whom the Act was designed to protect." *Dealers Elec. Supply Co.*, 2009 Tex. LEXIS 475, at *16 (citing *C & G, Inc. v. Jones*, 165 S.W.3d 450, 453 (Tex. App.–Dallas 2005, pet. denied)); *see Lively v. Carpet Servs., Inc.*, 904 S.W.2d 868, 873 (Tex. App.–Houston [1st Dist.] 1995, writ denied). The supreme court has noted that the Act "was enacted for the protection of laborers and materialmen, and is a remedial statute that should be given a broad construction." *Dealers Elec. Supply Co.*, 2009 Tex. LEXIS 475, at *20 (citing *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985); *C & G, Inc.*, 165 S.W.3d at 454). "'The purpose of [the Trust Fund Act] is best served when the statute is read in accordance with its common sense meaning.'" *C & G, Inc.*, 165 S.W.3d at 454 (quoting *Vulcan Materials Co. v. Jack Raus, Inc. (In re HLW Enters. of Tex., Inc.)*, 157 B.R. 592, 597 (Bankr. W.D. Tex. 1993)).

**2. Discussion**

It is undisputed that SCC was a trustee of the trust funds and that Dealers was a beneficiary of the trust funds. *See* TEX. PROP. CODE ANN. §§ 162.001(a), 162.003. The parties' dispute centers on (1) whether Bill exerted control over the trust funds so as to be a trustee and (2) whether SCC and/or Bill misapplied trust funds by refusing to pay Dealers for materials provided to Diamond for use in the project.

Among SCC and Bill's arguments on appeal are that they did not violate the Trust Fund Act because: (1) "Dealers failed to prove that the bulk of the material sold to Diamond were [sic] actually incorporated into the school project"; (2) Dealers failed to establish a violation of the Trust Fund Act; and (3) if Dealers did prove a Trust Fund Act violation, SCC and Bill conclusively established at trial an affirmative defense to prosecution under the Trust Fund Act. *See* TEX. PROP. CODE ANN. § 162.031(b).

With respect to SCC and Bill's first contention, the trial court found that the delivery tickets admitted into evidence all showed that Dealers' materials were delivered to the project. In addition, in its findings of fact, the trial court referenced the testimony of Antonio Tello and Ernesto Garcia, both employees of Dealers. Both Tello and Garcia testified to seeing materials provided by Dealers incorporated in the project. In particular, Tello believed that most of the materials incorporated in the project were provided by Dealers because the project required many special orders that were unique to the project and the incorporation of such materials in the project was visible to Tello on a "walk-through" inspection.

SCC and Bill direct us to Garcia's and Tello's testimony where they admitted on cross-examination that they did not account for each and every item provided by Dealers

9

to ensure that they all were incorporated in the project. Tello did state, however, that when he saw Dealers' specially-made projects incorporated into the project during his "walk-through" inspection, the project was 95% complete. SCC and Bill also refer to Garcia's seemingly inconsistent testimony, whereby he admits that Dealers delivered materials to be used in the project to Diamond's place of business and that Dealers allowed Diamond to pick up materials at Dealers' place of business. Garcia testified that of the disputed materials, approximately $56,000 worth of materials were delivered directly to Diamond with the remaining materials delivered directly to the project site. However, Garcia later explained that Plaintiff's exhibit 69 illustrated that of the disputed materials allegedly furnished to the project, $42,088.53 of materials were delivered from Dealers' factory directly to the project site, $29,432.36 of materials were delivered directly to the project site by Dealers' truck, and $6,314.92 of materials were "will call materials" that were picked up at the counter of Dealers' supply store.

SCC and Bill's first contention essentially centers on the trial court's reconciling of Tello and Garcia's testimony regarding the materials furnished to and incorporated into the project by Dealers. Because the trial court was the sole judge of the credibility of witnesses, it was empowered with the discretion to believe one witness over another; we may not impose our own opinion to the contrary, and thus, we must defer to the trial court's resolution of the testimony. *See City of Keller*, 168 S.W.3d at 819. Furthermore, other than referring to the allegedly inconsistent testimony of Garcia and Tello, SCC and Bill have not directed us to any evidence in the record demonstrating that all or some of the materials provided by Dealers were not furnished to or incorporated in the project. Moreover, SCC and Bill have not directed us to, nor are we aware of, authority requiring

10

that the materials provided to a project by materialmen actually be incorporated in the project. In fact, the governing statute does not impose such a requirement. *See* TEX. PROP. CODE ANN. § 162.003(a). Based on our review of the record, we cannot say that the disputed findings of fact were supported by legally insufficient evidence. *See City of Keller*, 168 S.W.3d at 827; *see also Uniroyal Goodrich Tire Co.,* 977 S.W.2d at 334; *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998) (holding that in a legal sufficiency challenge, we must view all of the evidence in the light most favorable to the prevailing party and indulge every reasonable inference in favor of the trial court's judgment). In reviewing SCC and Bill's factual sufficiency challenge, we cannot say that the trial court's findings are against the great weight and preponderance of the evidence as to be manifestly unjust or clearly wrong. *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761-62.

By their second and third contentions, SCC and Bill assert that Dealers failed to establish a violation of the Trust Fund Act and that even if Dealers did prove a violation of the Trust Fund Act, SCC and Bill established an affirmative defense, as provided by section 162.031(b) of the property code. *See* TEX. PROP. CODE ANN. § 162.031(b).[4] Dealers argues that several pay applications that SCC submitted to the M.I.S.D. for reimbursement of expenses prove that SCC and Bill misapplied trust funds and, therefore, violated the Trust Fund Act. In particular, Dealers directs us to pay applications dated May

---

[4] Section 162.031(b) provides that it is an affirmative defense to an action brought under the Trust Fund Act if:

> the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement or have been retained by the trustee, after notice to the beneficiary who has made a request for payment, as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds or have been retained as authorized or required by Chapter 53.

TEX. PROP. CODE ANN. § 162.031(b) (Vernon Supp. 2009).

1, 2002, June 4, 2002, June 27, 2002, August 1, 2002, September 3, 2002, September 27, 2002, and January 22, 2003, in which SCC and Bill represented to the M.I.S.D. that:

> The undersigned contractor certifies that to the best of the Contractor's [SCC and Bill] knowledge, information and belief Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that *all amounts have been paid by the Contractor for Work for which previous Certificates of Payment were issued and payments received from the Owner*, and that current payment shown herein is now due.

(Emphasis added.) As noted earlier, Dealers sent several letters to SCC and Bill demanding payment for the materials provided to the project, letters which predated many of the pay applications submitted to the M.I.S.D. Dealers now argues that because the M.I.S.D. paid SCC the amounts requested in the pay applications, despite SCC and Bill's knowledge of the amounts owed to Dealers, SCC and Bill intentionally and knowingly made false representations to the M.I.S.D. in order to obtain payment, and, further, these actions amounted to a misapplication of trust funds and a violation of the Trust Fund Act. Dealers also argues that because Bill is the president and sole shareholder of SCC and signed the joint checks paid to Diamond and Dealers, he is individually liable for violating the Trust Fund Act.

At trial, Stacy Scoggins, Bill's daughter and SCC's secretary and bookkeeper, testified that: (1) SCC received $5,794,031.73 from the M.I.S.D. for the construction of the elementary school; (2) the total expenses for materials and labor provided by all the subcontractors on the project amounted to $5,489,260.23; and (3) SCC had projected a 5% profit on the elementary school project when it made its bid. Stacy further testified that SCC paid itself approximately the 5% profit it projected from the proceeds obtained from the M.I.S.D.; the profit was used to pay overhead and day-to-day expenses for SCC, such as salaries, insurance, lighting bills, air conditioning bills, and water bills; and the payment

12

of such expenses was not a violation of the Trust Fund Act. Stacy also noted that she was not aware of any construction funds received from the M.I.S.D. that were "siphoned off" by SCC or Bill.

On appeal, SCC and Bill point to the testimony of Garcia, who testified that he was not aware of either SCC or Bill misappropriating any of the construction funds received by SCC from the M.I.S.D. Garcia, however, also stated that he was unsure how Bill handled the construction funds received from the M.I.S.D. Furthermore, in an affidavit in a related lawsuit against Diamond that was admitted as a part of Plaintiff's exhibit 49, Bill swore that Diamond had approximately $76,700 in electrical supplies that were provided by Dealers and not incorporated into the project. Bill also averred that SCC had paid Diamond "all sums due and owing to the Defendant [Diamond] for the work and materials provided by Defendant on said subcontract" and that "[p]rior to the termination of said subcontract, [SCC] purchased from Dealers . . . certain electrical supplies and specially fabricated items for the electrical system of said school . . . ."

Among its findings of fact, the trial court found that Dealers provided $78,123.59 in materials to the project; SCC did not pay for these materials; and Bill falsely swore under oath on January 22, 2003, in the final pay application to the M.I.S.D. that all amounts owed had been paid by SCC. Thus, the trial court concluded that SCC and Bill violated the Trust Fund Act and were liable to Dealers for $78,123.59.

Indeed, the record contains several demand letters sent by Dealers to SCC notifying SCC that it owed money for materials provided to the project. However, despite this notice, SCC and Bill continued to submit pay applications to the M.I.S.D. claiming that all work and materials had been paid for by SCC. Each of these pay applications was personally signed

by Bill. The record also contains numerous joint checks signed by Bill and made payable to Diamond and Dealers for materials and labor provided to the project, thus demonstrating that Bill exerted control over the finances for SCC. *See C & G, Inc.*, 165 S.W.3d at 454 ("However, there must be some evidence that the officer or director had control or direction over the trust funds, such as possessing and exercising the power to divert the trust funds by sending the funds wherever they choose and actually controlling the disposition of the funds.") (citing *Nuclear Corp. of Am. v. Hale*, 355 F. Supp. 193, 197-98 (N.D. Tex.), *aff'd*, 479 F.2d 1045 (5th Cir. 1973) (per curiam)). Based on our review of the record, we cannot say that the trial court erred in concluding that SCC and Bill intentionally or knowingly misrepresented to the M.I.S.D. that they had paid for all work and materials provided to the project. As a result of SCC and Bill's misrepresentations to the M.I.S.D., the evidence demonstrates that SCC retained $327,846.18 in profits for itself, or, in other words, more than the contracted 5% profit.[5] *See BMC Software*, 83 S.W.3d at 794 (holding that we will uphold a conclusion of law if the judgment can be supported on any legal theory supported by the evidence).

"'Misapplication' [of trust funds] occurs when a trustee intentionally [or knowingly] or with intent to defraud[6], directly or indirectly retains, uses or diverts trust funds without first fully paying all obligations to the beneficiaries." *Lively*, 904 S.W.2d at 874 (citing TEX.

---

[5] Based on Stacy's testimony, SCC retained $304,771.45 in profits from the project. This figure was calculated by subtracting all of the cash disbursements SCC made to its vendors (including Borchers and Ace)—$5,489,260.28—from the amount it received from the M.I.S.D.—$5,794,031.73. However, SCC's records reflect that it only disbursed $5,466,185.55 to its vendors, leaving SCC with an actual profit of $327,846.18, which is more than the 5% that SCC projected. *See id.* § 161.001(c) (Vernon 2007). In fact, based on Stacy's testimony that SCC received $5,794,031.73 and SCC's 5% profit projection, SCC would have netted only $289,701.59, not $327,846.18 in profits. When asked about the difference in the amounts paid to SCC's vendors, Stacy testified that she was unsure as to why the amounts differed and that she was not responsible for reconciling the difference.

[6] We note that there is no evidence supporting an "intent to defraud." *See id.* § 162.031(a).

14

PROP. CODE ANN. § 162.031(a)). Here, SCC retained more than the contracted 5% profit for itself even though it had been notified by a trust fund beneficiary and materials provider, Dealers, that it had not been paid for materials provided to the project. Therefore, in keeping with the Trust Fund Act's purpose to protect laborers and materialmen, we conclude that the record supports the trial court's finding that SCC and Bill violated the Trust Fund Act. *See* TEX. PROP CODE ANN. § 162.031(a); *see also Dealers Elec. Supply Co.*, 2009 Tex. LEXIS 475, at *21; *RepublicBank Dallas, N.A.*, 691 S.W.2d at 607; *C & G, Inc.*, 165 S.W.3d at 454. Accordingly, we hold that the evidence supporting the trial court's finding that SCC and Bill violated the Trust Fund Act is legally sufficient.[7] *See BMC Software*, 83 S.W.3d at 794; *Stockton*, 53 S.W.3d at 423.

Nevertheless, SCC and Bill assert as affirmative defenses that the money retained was used to pay actual expenses and offsets related to the project and that they were entitled to take a reasonable profit even though Dealers had not been paid for materials provided. *See* TEX. PROP. CODE ANN. § 162.031(b). SCC and Bill, however, failed to request findings from the trial court on their affirmative defenses.

"A party asserting an independent ground of recovery or an affirmative defense in a trial before the court must request findings in support thereof in order to avoid waiver." *Alma Invs., Inc. v. Bahia Mar Co-Owners Ass'n*, 999 S.W.2d 820, 822 (Tex. App.–Corpus Christi 1999, pet. denied). "If the findings filed by the trial court do not include any element of the ground of recovery or defense asserted, failure to request additional findings relevant thereto effects a waiver of the ground or defense." *Id.*; *see Intec Sys. v. Lowrey*,

---

[7] Bill also argues that he cannot be held liable in his individual capacity because he was not a party to the joint-check agreement and that there is insufficient evidence to support piercing the corporate veil. However, because we have concluded that the evidence established that Bill exerted control over the finances of SCC and, in turn, violated the Trust Fund Act, we need not analyze these sub-issues. *See* TEX. R. APP. P. 47.1; *see also* TEX. PROP. CODE ANN. § 162.031(a).

15

230 S.W.3d 913, 919 (Tex. App.–Dallas 2007, no pet.). "'[A]n express finding of fact cannot extend by implication to cover independent grounds of defense' and 'cannot extend to cover further independent issuable facts.'" *Intec. Sys.*, 230 S.W.3d at 919 (quoting *F.R. Hernandez Constr. & Supply Co. v. Nat'l Bank of Commerce*, 578 S.W.2d 675, 679 n.4 (Tex. 1979)).

In the instant case, SCC and Bill generally requested that the trial court issue findings of fact and conclusions of law. The record does not include a request filed by SCC or Bill moving the trial court to specifically issue findings on their affirmative defenses. *See* Tex. R. Civ. P. 298 (stating that after the trial court files its original findings of fact and conclusions of law, any party may file "a request for specified additional or amended findings or conclusions"); *see also Alvarez v. Espinoza*, 844 S.W.2d 238, 241-42 (Tex. App.–San Antonio 1992, writ dism'd w.o.j.) ("A bare request is not sufficient; proposed findings must be submitted.") (citing *Heard v. City of Dallas*, 456 S.W.2d 440, 445 (Tex. Civ. App.–Dallas 1970, writ ref'd n.r.e.)). Therefore, because SCC and Bill did not request that the trial court issue findings specifically addressing their affirmative defenses, we conclude that SCC and Bill have waived their arguments pertaining to the affirmative defenses provided by section 162.031(b). *See* Tex. R. Civ. P. 298; *see also Alma Invs., Inc.*, 999 S.W.2d at 822; *Alvarez*, 844 S.W.2d at 241-42.

Based on the foregoing, we uphold the trial court's findings that: (1) Dealers furnished $78,123.59 in materials for the project; and (2) SCC and Bill misapplied trust funds by refusing to pay Dealers for the materials provided. We further hold that SCC and Bill waived their appellate arguments pertaining to their affirmative defenses by failing to

16

request specific findings from the trial court. Accordingly, we overrule SCC and Bill's third and fourth issues on appeal.

## V. CONCLUSION

The trial court, in its conclusions of law, held that SCC and Bill were jointly and severally liable to Dealers for $78,123.59 in actual damages for breaching the joint-check agreement or for violating the Trust Fund Act. Because we have upheld the trial court's conclusion that SCC and Bill are liable for the $78,123.59 damage award for violating the Trust Fund Act, we need not analyze SCC and Bill's arguments pertaining to the joint-check agreement, as that issue would not alter our ultimate disposition—that Dealers is entitled to $78,123.59 in actual damages from SCC and Bill. *See* TEX. R. APP. P. 47.1; *see also BMC Software*, 83 S.W.3d at 794; *Marsh v. Marsh*, 949 S.W.2d 734, 739 (Tex. App.–Houston [14th Dist.] 1997, no writ) (stating that the reviewing court independently evaluates the trial court's conclusions of law and upholds them if the trial court's judgment can be sustained on any theory supported by the evidence). Thus, we affirm the judgment of the trial court.

 

 

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion on Remand delivered
and filed this the 22nd day of October, 2009.